No. 34,940

EDWARD A. SMITH, *Appellant*, v. ROBERT BROWN, GEORGE T. BROWN and GUY BROWN, Partners doing business as BROWN BROTHERS, *Appellees*.

(107 P. 2d 718)

Opinion filed December 7, 1940.

*A. J. Herrod*, of Kansas City, for the appellant.

*William E. Carson* and *Willard L. Phillips*, both of Kansas City, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: The appeal is from an order of the trial court sustaining a demurrer to plaintiff's evidence.

For many years the plaintiff, Smith, conducted an auto repair shop in Kansas City. The defendants were partners engaged in construction work. They owned tractors which were used in their business, and plaintiff had repaired and overhauled their tractors for several years.

In December, 1937, plaintiff entered into an oral agreement with defendants to overhaul and repair a tractor. Plaintiff was to receive seventy-five cents per hour while working on the tractor—defend-

ants to pay for necessary parts. The tractor remained in plaintiff's shop from December, 1937, until February 11, 1938. On the later date plaintiff notified defendants the work was done and the tractor ready for delivery. One of the defendants, Robert Brown, came to plaintiff's shop, paid him for the work and materials, and stated he would send a truck for the tractor. Brown requested the plaintiff to load the tractor on the truck, and to go with the truck and unload the tractor at the point of delivery. On the same day one Welch, an employee of the defendants, drove a truck to plaintiff's shop for the tractor.

The truck weighed 3,800 pounds, it had a flat bed ten feet long, seven feet and eight inches wide, no cab, and the seat was a board on the top of the gas tank. A 2 by 10 sideboard was on each side of the bed and held upright by 2 by 4 stakes. The bed was three feet, eight inches from the ground. The truck had dual rear wheels, each rear tire being six and one-half inches wide, making a total tread of thirteen inches on each pair of rear wheels. Inside the rear wheels were brake drums with a diameter of fifteen inches.

The tractor was a caterpillar tractor weighing 7,700 pounds, seven feet long and four feet, six inches wide.

When the truck arrived at plaintiff's garage he placed on the bed two 3 by 12 planks or skids so that the lugs of the tractor would not damage the bed of the truck. When placed, the skids extended out about ten inches beyond the rear end of the truck.

After the skids were placed on the truck, plaintiff ordered Welch to drive it to a point about a block and a half from the garage, where there was a bank about the same height as the bed of the truck, in order that the tractor might be loaded from that point. Plaintiff drove the tractor to the same place and up on the bank, then backed it onto the truck with the caterpillar treads on the skids.

After the tractor was loaded the truck was driven over to Robert Brown's home on Steele road, Welch driving, the plaintiff seated beside him on the right-hand side of the truck.

Steele road extends east and west. The Brown property is on the north side of the road from fifteen to seventeen feet north of the edge of the pavement. At the east end of the property the bank along the highway is quite a bit higher. Both bank and road slant westward, but the bank at a sharper angle. Consequently, directly in front of the Brown house (west end of the property) the bank and the highway are about the same level.

.The truck approached the Brown property from the east, traveling slowly down grade. When it reached a point where the bank was substantially the same height above the road as was the bed of the truck, Welch stopped it and backed it off the road, with the rear end of the truck against the bank. The bank was not the same height at any other place along the road. The ground at the place was not wet or muddy.

After stopping the truck Welch got off. Plaintiff left his seat, stepped up on the bed of the truck, removed a chain which he had fastened around the tractor, walked along the bed of the truck to the front end of the tractor, cranked it, walked back to the seat of the tractor, climbed up on it and started to run it off the truck. After it moved about ten or twelve inches, the right rear wheels of the truck sank into the soft earth about six inches. The tractor slipped off the skids and the plaintiff was either thrown or jumped to the ground. The tractor did not leave the bed of the truck, but stopped with the front end against the bank and a telephone pole. The crank was "bored in the bank."

The petition alleged that when the right rear wheel of the truck sank into the soft earth causing the tractor to slide or fall from the body of the truck, plaintiff was thrown from the seat of the tractor and sustained severe injuries. It was charged that the injuries were caused by the carelessness and negligence of defendants' servant and agent, Welch, in the following particulars: (a) In backing the truck into soft ground without stopping to ascertain the condition of the ground; (b) in backing onto soft ground when he knew or should have known that by backing onto soft ground the wheels would sink and cause the tractor to slide or slip from the bed of the truck; (c) in failing to place any boards, rock or other material on the ground before backing onto it, when he knew that in the event the truck was backed onto the soft ground the wheels would sink and cause the body of the truck to tilt or turn over.

The only question is whether the trial court erred in sustaining the demurrer to plaintiff's evidence.

The plaintiff was a skilled mechanic and was familiar with the various ways to load and unload a tractor. He stated: "I have worked on some tractors over there, have worked on all the machinery Brown Brothers had. Did most all of their repair work on a basis of seventy-five cents an hour in my shop and $1 an hour at their place."

The job of the plaintiff was to load and unload the tractor. He was the entrepreneur, the director of the enterprise. When the tractor was to be loaded, plaintiff directed Welch to place the truck a block and a half from the shop, at the proper place for loading. Welch complied with these directions. There is no evidence that plaintiff directed Welch as to the point of unloading, but it does appear that plaintiff was riding on the north side and saw or could have seen the ground and the bank. After the truck had backed against the bank, the driver, Welch, got off the truck—the plaintiff remained on the truck and undertook the operation of unloading.

In the trial court there seems to have been a question whether plaintiff and defendants were within the provisions of the workmen's compensation act. Plaintiff contends that defendants exercised no control over plaintiff as to time, manner or method of the work, was responsible to defendants only for the end result, and therefore plaintiff was not a servant of the defendants, but an independent contractor. We think this is the correct view as to the legal relationship existing between the parties, and that such relationship existed until the tractor was delivered and unloaded.

In *Lafferty v. Gypsum Co.*, 83 Kan. 349, 111 Pac. 498, it was said:

"The general rule is that when a person lets out work to another, the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant, and the contractee is not liable for the negligence or improper execution of the work by the contractor." (Syl. ¶ 1.)

In *Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120, it was also said:

"When a person lets out work to another, the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant, and the contractee is not liable for the negligent or improper execution of the work by the contractor." (Syl. ¶ 1.)

The defendants were not liable for the negligence of the plaintiff or his employees.

We are also clear that Welch, the driver, during the operation of loading and unloading the truck, was the servant of the plaintiff and not of defendants.

In *Baker v. Petroleum Co.*, 111 Kan. 555, 560, 207 Pac. 789, it was said:

". . . It is well settled that the servant of A may for a particular purpose, or on a particular occasion, be the servant of B, though he continues to be the general servant of A and is paid by him for his work." (See, also,

*Moseman v. Penwell Undertaking Co.,* 151 Kan. 610, 100 P. 2d 669, and cases cited.)

In the performance of the particular service of loading and unloading the tractor, the physical conduct of the driver of the truck, Welch, was under the control and the right of control of the plaintiff. If plaintiff was injured through the negligent conduct of Welch, the negligence was negligence of his own servant.

In all that has been said we have assumed that the injuries of the plaintiff were sustained through the negligent conduct of the driver of the truck. However, we have examined the record and fail to find any evidence of negligence on the part of the driver. His conduct appears to have been that of a prudent and reasonable man under like circumstances. As there was no error in sustaining the demurrer to the evidence, the judgment must be affirmed. It is so ordered.