No. 35,432

THE TRI-STATE HOTEL COMPANY, INC., *Appellant*, v. THE SOUTH-WESTERN BELL TELEPHONE COMPANY, *Appellee*.

(125 P. 2d 728)

Opinion filed May 9, 1942.

*B. F. Napheys, Jr.,* of Denver, Colo., argued the cause, and *Dean McIntyre,* of Abilene, was on the briefs for the appellant.

*W. F. Lilleston,* of Wichita, argued the cause, and *S. L. Harris, William A. Gray,* both of Kansas City, Mo., and *E. W. Clausen,* of St. Louis, Mo., were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to recover for alleged overcharges for hotel private branch exchange telephone service for the period commencing April 1, 1938, and ending August 1, 1940. There was a trial by the court. The court made findings of fact and conclusions of law and rendered judgment for defendant. Plaintiff has appealed.

The pertinent portions of the amended petition may be summarized as follows: That plaintiff, a corporation, is the proprietor and operator of the Hotel Broadview in Wichita; that defendant is a Missouri corporation authorized to do business in Kansas, and is such a company as is described and referred to in G. S. 1935, 66-101 and 66-104, and is the sole telephone public utility company owning and operating a telephone exchange in the cities of Wichita, Topeka, Garden City and Pittsburg; that since the effective date of chapter 238, Laws of 1911 (G. S. 1935, 66-101 *et seq.*), defendant has not complied with G. S. 1935, 66-108, in that no rate, charge, rule, classification or regulation has been published and filed with

the state corporation commission, or its predecessor commission (hereinafter referred to as commission), providing for a private branch exchange telephone service available for hotels such as plaintiff and its assignors; that the commission, since January 1, 1911, has not approved as reasonable any rate, charge, classification or tariff schedule providing for private branch exchange telephone service in hotels; that pursuant to G. S. 1935, 66-130, no such rates having been filed and approved, utility companies such as defendant, are forbidden to demand, collect, or receive any greater compensation for services than the charges fixed by the lowest schedule of rates for the same service on January 1, 1911; that as plaintiff is informed and believes and therefore alleges, the lowest scheduled rate for hotel private branch exchange telephone service on January 1, 1911, provided in substance that the telephone company would furnish, install, maintain and replace all necessary equipment for this service for a rate of 25 cents per month for each room telephone station; that in violation of G. S. 1935, 66-130, defendant has demanded and received from plaintiff and its assignors, since April 1, 1938, a rate and charge greatly in excess of the lowest rate in effect on January 1, 1911; that since April 1, 1938, plaintiff received service from defendant for a stated number of rooms and, in violation of G. S. 1935, 66-130, defendant has demanded and received from plaintiff, under compulsion and threats to discontinue service and the exigencies of business and mistake in fact, a sum in excess of the rate of 25 cents per month per telephone, which alleged excess sum is stated; that continuously since October 1, 1935, defendant has had on file with the commission a provision in substance that defendant may discontinue service to its customers upon the nonpayment of any bill rendered for services, and since that date plaintiff has paid the bills as presented by defendant presuming and believing that they were in accord with the regularly filed and approved schedule of rates, and under compulsion, threats, and the exigencies of business, and under mistake of fact.

Similar allegations are made on behalf of the operators of the Hotel Lassen in Wichita, the Chesterfield Hotel in Topeka, the Hotel Warren in Garden City, and the Hotel Besse in Pittsburg, and it is alleged that the accounts for such excess charges due each of such operators has been duly assigned to plaintiff. The prayer is for judgment for plaintiff in its own behalf and in behalf of each

of its assignors for the excess charges alleged to have been paid by the operators of the respective hotels.

Defendant in its answer admitted it is a Missouri corporation authorized to do business in Kansas, and denied all allegations of the petition not specifically admitted, and alleged: That defendant was not and had not been holding itself out by tariffs or otherwise as being a public utility in rendering or offering to render hotel private branch exchange telephone service to the public, or to plaintiff, or to any of its assignors; that on January 1, 1911—and at any time prior to December 24, 1938—there was no schedule of rates for private branch exchange telephone service for hotels in Kansas; that on January 1, 1911, and at all times thereafter and until December 24, 1938, the kind, type, cost and finish of the equipment, and the quality, quantity, use and availability of the service, differed in the various cities, and in different hotels in the same city, for a private branch exchange telephone service for hotels, and the conditions and expenses of installation and operation in the various cities and hotels varied so greatly that defendant did not undertake to furnish such service and was unable to standardize or classify such varying demands and conditions; that on December 24, 1938, defendant for the first time filed with the commission a tariff and schedule of rates applicable to private branch exchange telephone service for hotels; that the rates for such service set forth in such tariff were the same as those charged plaintiff and its assignors, which tariff sheets were attached; that prior to December 24, 1938, defendant sold such hotel private branch exchange service as it furnished only under terms of private contract negotiated from time to time with individual hotels, which contract, charges and service were not under the jurisdiction of the commission and varied in terms as to the mutual obligations of the respective parties as for the type, finish, kind, quality and quantity at any given time for the service furnished; that during the period of the effective date of chapter 238, Laws of 1911, to December 24, 1938, defendant had on file with the commission tariffs, to the application of which by defendant the commission consented, which tariffs were attached by exhibits 2 to 50; that during the World War, and effective July 31, 1918, to July 31, 1919, the lines, property and business of defendant were taken over, operated and controlled by the United States through the Postmaster General, who, with the authority granted, offered during that period to furnish general telephone service, but did not offer and refused to furnish

hotel and private branch exchange service as a part of the service for which the property of defendant in the hands of the United States had been dedicated; that within said period a comprehensive scheme of telephone rates was adopted and put into effect by the federal government through the Postmaster General, but no rates were promulgated for hotel private branch exchange service, and during said period hotel private branch exchange telephone service continued to be handled, whenever furnished, by private contracts between the Postmaster General and the respective hotels, and during that period there was on file with the commission, consented to and approved by it, and in effect, a tariff of defendant, marked as an exhibit, containing the provision with reference to private branch exchange telephone service, "Hotels: Rates may be obtained by application to the commercial superintendent," which provision constituted a limitation by the Postmaster General on the extent of the general offer to serve, excluding from such general offer hotel private branch exchange service; that on August 1, 1919, at the close of federal control, defendant filed with the commission a tariff, a copy of which was attached, restating the limitation upon its offer to serve as follows: "Hotels: Rates may be obtained by application to the commercial superintendent," and the hotel private branch exchange service which it furnished was exclusively on the basis of privately negotiated contracts; that thereafter and prior to January 22, 1920, defendant applied to the commission for approval and authority to continue the rates and practices and limitations upon its offer to maintain telephone service established by the Postmaster General, and after due notice, full hearing and investigation, the commission on January 22 found that the rates and practices of defendant then in effect and established by the Postmaster General were just, reasonable and lawful, and by order made on that date granted permission to defendant to continue such rates and practices in effect; that at all times after the effective date of chapter 238, Laws of 1911, the commission was fully advised and knew that one of the practices of defendant was to limit its offer to render telephone service to the public by excluding hotel private branch exchange service and to deal with hotels desiring such service on a basis of privately negotiated contracts, to which practice the commission from time to time consented; that on January 20, 1931, the commission instituted an investigation of the practices then followed by defendant, and while that investigation was pending, and on June 14, 1932, instituted

further investigation of such practices and the two cases constituted an investigation of all the operations of defendant and the extent to which it was lawfully discharging its obligation as a public utility—the pertinent orders in both of which cases were attached—and upon full investigation, in which hearings were had and evidence introduced, the commission dismissed both proceedings, which dismissal constitutes a final determination of each of the investigations, from which no appeal was had, and under G. S. 1935, 66-115, such final determination became binding upon all parties thereto and upon the court; that should the court determine defendant, notwithstanding its intention not to do so, held itself out as being ready, able and willing to furnish hotel private branch exchange service as a public utility prior to December 24, 1938, the procedure followed was in accordance with tariffs heretofore mentioned and attached, and the service mentioned in plaintiff's amended petition was furnished for the charges actually made, with the full knowledge, consent and approval, and under the orders of the commission; that the commission, on January 20, 1931, initiated an investigation of the rates, joint rates, tolls, joint tolls, charges, rules, regulations, classifications, extent of service furnished, practices and schedules of public utilities and telephone companies engaged in the transmission of messages, sale and rendering of telephone service to all kinds and classes of customers for any and all purposes in the state, and thereafter from time to time there was submitted to the commission facts showing the result of the operations of defendant and the rates, charges and practices pertaining thereto, and on the 19th of March, 1937, the commission dismissed the proceedings and thereby consented to continue in effect all the rates, charges and practices covered by the order of investigation. A copy of the order was attached. That the commission issued another order, docket 13,777, which provided for a particular investigation of all special services, charges and practices, filed as general exchange tariffs, and into the reasonableness of all rates, tolls, joint tolls, charges, classifications, regulations, practices, acts and service which entered into or affected the base rate—a copy of which order was attached—and the commission held numerous hearings in the docket number, and on March 19, 1937, the commission issued its order dismissing the proceeding without prejudice to future inquiry or investigation in the light of changed circumstances and conditions, a copy of which order was attached; that the charges for hotel private branch telephone exchange service being

made by defendant for the period covered by the investigation differed from the charges being made in 1911, and were the charges plaintiff in its amended petition claimed were collected from it and its assignors for hotel private branch exchange telephone service. Further answering, defendant alleged that if the payments were made by plaintiff or its assignors, as set out in plaintiff's petition, such payments were made by each of them in varying amounts, at frequent intervals, freely, voluntarily, and with full knowledge of all the facts. It is further alleged that on January 1, 1911, telephone companies were not required by any law to file with any state commission a schedule of rates for private branch exchange telephone service, and there was no such schedule of rates of this defendant fixing the charges for such service; that the charges for such private branch exchange telephone service varied with every hotel and every locality according to varying demands, expense and numerous other conditions peculiar in each case, and the installation of such service was accomplished and carried on through private contract with each hotel thus served, and the charge therefor varied with conditions which were never uniform; that defendant did not then render private branch exchange telephone service to the plaintiff and its assignors; that no private branch exchange telephone service for the period for which the plaintiff seeks recovery was either qualitatively or quantitatively the same, or substantially the same, as that rendered in any hotel in Kansas on January 1, 1911, but the equipment for and expense and method of operation were radically different. It further alleged that G. S. 1935, 66-130, does not prescribe any ascertainable standard of duty or rule of decision for the guidance of utilities, their patrons, or courts, or of the commission, and hence is inapplicable or invalid as applying to the time covered by the claim of the plaintiff. It is further alleged that the private branch exchange telephone service rendered the plaintiff and its assignors was rendered by defendant at the special instance, solicitation and request of the plaintiff and said assignors, in reliance upon such request and solicitations of service, and in reliance upon the rates therefor, and the contract then agreed upon, which rate in each case was voluntarily paid, and that defendant, at great expenditure of time, labor and money, installed elaborate equipment for each of the hotels mentioned in plaintiff's petition, and plaintiff and each of its assignors, prior to the payment of the rate and the installation of the equipment, had duly agreed with defendant to pay such rates

for such service; that neither the plaintiff nor any of its assignors was conducting a hotel business on January 1, 1911, and that at no time prior to August 14, 1940, did plaintiff or its assignors claim that the twenty-five-cent rate mentioned in the amended petition was the proper rate, charge or consideration for such telephone service, and by reason thereof plaintiff and its assignors have waived the rights and are estopped to assert the existence of a different rate on January 1, 1911, from that agreed upon, charged and paid as aforesaid.

Plaintiff, by reply, denied all the allegations of the answer except that on December 24, 1938, defendant tendered for filing with the commission a schedule of rates set forth in the exhibit attached to defendant's answer, but alleged that the application was still pending undetermined.

The parties entered into a written stipulation, the pertinent portions of which may be summarized or quoted as follows: That since October 1, 1935, defendant has operated a telephone system, without competition, in Wichita, Topeka, Pittsburg and Garden City; that defendant had on file with the commission, "referring to hotel private branch exchange service, certain tariffs effective at various times in Topeka, Wichita, Garden City and Pittsburg, under which it operated with the consent of the commission," which tariffs are attached to defendant's answer as exhibits 2 to 50; that to the date of the stipulation counsel for defendant, after diligent search, have been unable to find any supplemental instructions that might have reference to any exhibit 30, Pittsburg; 39, Topeka, and 50, Wichita, under the title "Hotel private branch exchange," and should such supplemental instructions be found later plaintiff's counsel will be given an opportunity to make copies; that about December 24, 1938, defendant filed with the commission a tariff (attached as an exhibit), pursuant to which it offered to furnish hotels with private branch exchange service; that the commission established docket No. 19,264, in which defendant filed an exhibit, including schedules applied to hotels in certain cities, which, "together with other attachments thereto and statements herein made, correctly state the facts with reference to relations between" defendant and the hotels in question; but this paragraph shall not be interpreted to infer an agreement between the parties as to the legal effect of their acts; that hearings had been had from time to time by the commission in connection with the docket No. 19,264, and

at the date of the stipulation was undetermined; that defendant had on file with the commission tariffs, rules and regulations governing its service, and to which the commission consented, including a provision that a subscriber's service may be suspended for nonpayment of toll or exchange service charges. It was stipulated that the Postmaster General took possession and control of defendant company and operated it for the time mentioned in the answer, and that each of the orders of the commission alleged in the answer to have been made were duly entered and no appeal taken therefrom; that plaintiff and its assignors paid defendant, without objection, the amount set out in plaintiff's petition; that certain correspondence was had and contracts made between defendant and the plaintiff or some of its assignors; that at the date of the stipulation counsel for defendant, after diligent search, had been unable to find any accounting, records or bills showing charges for hotel branch exchange service furnished during the year 1911, if any, at Topeka, Wichita, Pittsburg and Garden City; that exhibits 1 to 57, inclusive, attached to defendant's answer, and the assignments to plaintiff and plaintiff's exhibit A and exhibits B-1 to 26, inclusive, and the stipulation should be competent evidence in the case, the parties reserving the right to introduce additional evidence.

It was further stipulated that the proprietors of the hotels involved, if called as witnesses, would testify that during the period for which plaintiff seeks recovery they paid the telephone bills because defendant was the sole telephone company in their town and they believed they had no other remedy than to pay the bills, such testimony to be subject to objections made by defendant that it is incompetent, irrelevant and immaterial, self-serving declaration, and stating a conclusion of the witness, and in conflict with the stipulation, exhibit 1, introduced in evidence.

Mr. E. R. Barbour, a witness called by plaintiff, testified that from 1906 to 1916 he was manager of the Chesterfield Hotel in Topeka, owned and operated by Fowler and Ross; that when he began his services there was a telephone switchboard and telephones in all of the rooms; that as manager he paid the monthly bills for this service, which were 25 cents for each station and $3 for each of two trunks. This equipment had been installed by the Topeka Independent Telephone Company established by Mr. Pankey, a friend of Mr. Ross. The witness did not know when the equipment was installed and gave no testimony as to who paid for the equip-

ment, or the expenses of its maintenance, or whether the rate paid had ever been filed with the commission. Since 1917 the witness has been a clerk at the Throop hotel in Topeka. He testified defendant furnished the telephone service there for a charge per month of 25 cents per 'phone and $3 per trunk, but there was no testimony as to the kind of equipment, or who owned or maintained it, and whether any rate of that kind had ever been filed with the commission.

Plaintiff also produced the testimony of a Mr. Kelley (deceased prior to this trial), given about June 1, 1940, before the commission upon the hearing of the reasonableness of hotel charges as established by the tariff filed by defendant with the commission December 24, 1938. He then testified that he had owned and operated hotels in Iola for the preceding thirty-seven years; that he owned the Kelley hotel there, and that its rooms had been equipped with telephones for about thirty or thirty-one years. He had had a call system and decided to put in telephones. There was a very small switchboard, which was not new and was owned by the telephone company, but the witness owned the cables and wires connecting the switchboard to the room telephones. The charge was 25 cents per room for the telephone service. A change in the equipment and services was made in 1928.

At the close of the evidence plaintiff suggested certain findings of fact, which the court did not make. The court made findings of fact as follows:

"1. That the defendant telephone company had on file with the state corporation commission of Kansas, or its predecessors, referring to hotel private branch exchange service, certain tariffs effective at various times in Topeka, Wichita, Garden City and Pittsburg under which it operated with the consent of the commission, all of which tariffs are attached to defendant's answer and marked "Exhibits 2 to 50," inclusive.

"2. That (except as amended or superseded by succeeding tariffs attached to defendant's answer) no action was taken by any person, party, or commission to annul or modify any of said tariffs or the rules or regulations therein contained or any part thereof.

"3. That none of said tariffs contained a schedule of rates for hotel private branch exchange service, hotels being expressly excepted (with the consent of the state commission) from such schedules of rates as were contained in said tariffs, provision being made in such tariffs for the quotation or obtaining of hotel private branch exchange rates by application to the defendant company and by private arrangement between it and the hotel.

"4. That prior to the institution of this case the installation and operation

of hotel private branch exchange service was always handled by private agreement between the defendant telephone company and the hotel and was so handled with the hotels during the periods here involved, and such installations were made at the request of said hotels.

"5. That during the World War the telephone system of the defendant company was taken over by and under the federal control of the Postmaster General, who continued to operate said system and who likewise filed a tariff containing the express exception of hotels from the schedule of rates for private branch exchange service.

"6. That at the conclusion of said federal control on August 1, 1919, the defendant company filed with the public service commission of Kansas a tariff containing the same exception of hotels from the schedule of rates for private branch exchange service as was contained in the said tariff of the Postmaster General; that on January 22, 1920, after full hearings, the said commission made an order finding that the proposed rates of the defendant company which were then in effect, as authorized by the Postmaster General, were just and reasonable, and ordering that the defendant company be given permission to continue in effect and charge said rates.

"7. That the exclusion of hotels by the defendant company and the Postmaster General from the schedule of rates so filed as aforesaid with the state commission of Kansas, was done with the consent of said state commission.

"8. That the defendant telephone company did not file with the state corporation commission, or any of its predecessors a schedule of rates for hotel private branch exchange service until on December 24, 1939, when it filed such a schedule of rates with the state corporation commisison of Kansas, with the consent and at the request of said commission, which finally on May 21, 1941, approved said schedule of rates after full hearings.

"9. That those rates so filed with and approved on May 21, 1941, by the commission were the same rates charged the hotels involved in this case during the periods here involved and are the same rates here complained of by the plaintiff.

"10. That apart from said tariff approved by the commission on May 21, 1941, the defendant telephone company had not made a public offer as a public utility of private branch exchange rates to hotels in Kansas.

"11. That the defendant telephone company on January 1, 1911, did not make a public offer as a public utility of private branch exchange rates to hotels in Kansas.

"12. That the Besse Hotel at Pittsburg was built in 1926; that the Hotel Lassen in Wichita was built in 1918; that the Broadview Hotel in Wichita was built in 1921; that the Hotel Warren was built in Garden City in 1929; that only hotel multiple switchboards that are in the state of Kansas or have ever been in the state of Kansas on any of the lines owned or purchased by the defendant company are at the Lassen, Broadview and Allis Hotels, in Wichita, Kansas, said multiple switchboards having been installed as follows: In the Lassen Hotel on August 5, 1929; in the Broadview Hotel on June 17, 1937; and in the Allis Hotel in November, 1930; that the first hotel PBX in Garden City, Kansas, was installed in the Baird Hotel, December 19, 1927,

the next in the Palace Hotel, December 27, 1928, and the next in the Warren Hotel, July 26, 1929; that the defendant company did not own a telephone exchange or do business in Garden City, Kansas, until July 21, 1918.

"13. That none of the hotels involved in this case had a private branch exchange connected with the defendant company on January 1, 1911.

"14. That there is no satisfactory showing that the private branch exchange service rendered the hotels here involved during any part of the periods for which recovery is sought here was the same service rendered by the defendant telephone company on January 1, 1911.

"15. That there is no satisfactory showing that the defendant telephone company had, or that there was a schedule of rates fixing the charges of the defendant company for hotel private branch exchange service on January 1, 1911, or that any compensation demanded, collected or received by the defendant telephone company for hotel private branch exchange service on January 1, 1911, was fixed by any schedule of rates.

"16. That all telephone accounts involved in this case were rendered and paid monthly; that the hotels here involved all paid to the defendant, without objection, month after month, the amounts for which plaintiff seeks recovery.

"17. That the five hotels here involved were charged the same rates as those appearing in the tariff filed with the state commission on December 24, 1938, and by it afterwards approved; that said five hotels month after month charged and retained 2½ cents for each message and 10 percent of toll calls, not to exceed ten cents on each such call; that for a long period of years, including the periods involved in this case, the relations between the telephone company and the five hotels were determined and governed by private contract voluntarily entered into and carried out without objection or protest, under a succession of tariffs filed with the state commission and containing provisions authorizing such private arrangements and that such operations under said tariffs were conducted with the consent of the state commission; that plaintiff, while seeking to avoid the burdens of such private agreements, has not offered to return any of the benefits received thereunder.

"18. That throughout the years when said tariffs were in effect and excepting hotel private branch exchange service from the schedules therein set forth and leaving such service to the private negotiations of the parties, none of the five hotels here involved sought to terminate or modify such practice by complaint to the state commission or appeal or other action, notwithstanding the fact that said hotels during the periods for which recovery is sought in this case were required to file with the hotel commission and post in every room such rates and charges as were made for the use of such rooms and such other accommodations as went therewith.

"19. That there is no satisfactory showing that the defendant telephone company had, or that there was, a schedule of rates fixing the charges of the defendant company for hotel private branch exchange service on January 1, 1911, in Garden City, Topeka, Pittsburg or Wichita, or that any compensation demanded, collected or received by the defendant telephone company for

hotel private branch exchange service on January 1, 1911, in Garden City, Pittsburg, Topeka or Wichita, was fixed by any schedule of rates."

The court made conclusions of law as follows:

"(a) That the private arrangements under which the hotel private branch exchange service was admittedly rendered by the defendant telephone company to the five hotels and during the periods here involved, were authorized under tariffs which were admittedly filed with the state commission and under which the defendant company admittedly operated with the consent of the state commission.

"(b) That the defendant had a lawful right, unless and until prohibited by the state commission, to make contracts covering the furnishing of hotel PBX service.

"(c) That the tariffs which were admittedly filed with the state commission and under which the defendant company and the five hotels operated with the consent of the state commissions, were binding not only upon the defendant company and the hotels, but also upon the courts until changed by the proper tribunal, the state commission; that no such change was made by the state commission, as to the periods for which recovery is sought in this case.

"(d) That the defendant telephone company on January 1, 1911, did not make a public offer as a public utility or a private branch exchange schedule of rates to hotels in Kansas.

"(e) That by reason of the payments made by the five hotels here involved month after month without objection and by reason of the receipt and retention of benefits received by the hotels under the private arrangements between the parties, the hotels have waived any right, and are estopped, to claim coercion or duress in this case.

"(f) That no coercion or duress has been established in this case."

And further concluded that plaintiff was not entitled to recover on any of the causes of action of its amended petition, and that defendant was entitled to judgment for costs. Judgment was entered in accordance with these findings. Plaintiff moved to set aside the findings of fact made by the court and substitute those it requested, and also filed a motion for a new trial. These motions were overruled, at which time plaintiff asked leave to amend its petition by inserting after G. S. 1935, 66-130, at each place it occurred in the petition, "and section 66-117." This request was denied.

Counsel for appellant in their brief in this court ignore rule No. 6 (3) of this court, which requires:

"A statement of the question involved, or separately numbered statements of the several questions involved, in very brief and very general terms, to enable the court to acquire immediate comprehension of the nature of the controversy."

By ignoring this rule and indulging in a general discussion of the case it is made difficult for the court to determine what errors of law appellant contends the trial court committed, and makes it equally difficult for counsel for appellee. Reading the brief for appellant, we find but one point on which it is specifically contended the trial court erred, namely, the denial of plaintiff's request to amend its petition by inserting section 66-117 after section 66-130 in each place it occurred in the amended petition. The request was made so late that the ruling of the court was within its sound judicial discretion. There is no showing of an abuse of that discretion. Obviously it was an attempt by plaintiff "to mend its hold" after a full trial, and there is no argument now that plaintiff would have been in a better position if the section had been incorporated in the amended petition when it was filed, hence there was no error in that ruling.

In appellant's abstract one of the specifications of error is the overruling of plaintiff's motion to set aside findings of fact and conclusions of law made by the court and to substitute therefor plaintiff's suggested findings of fact and conclusions of law. Appellant's brief contains no discussion on that assignment of error. Counsel for appellee properly concluded it had been abandoned and did not discuss it in their brief. In their reply brief counsel for appellant, as to some of the findings of fact, stated they are true but immaterial. We think they are material. Other findings are complained of as being somewhat inaccurate, but the inaccuracies pointed out are not of a character to change the result. As to certain of the findings it is said they are not supported by the evidence. Notwithstanding the belated raising of this point, we have carefully examined the record and in our judgment each of the findings made is supported by substantial competent evidence.

As we read this record, plaintiff's action was predicated upon the premises, *first*, that on January 1, 1911, defendant had in effect a definite tariff for hotel branch exchange telephone service, uniform for all hotels, which upon information and belief only was alleged to be 25 cents per 'phone per month, the defendant furnishing and maintaining all of the equipment; *second*, that under G. S. 1935, 66-130, this rate was "frozen" and could be changed only by an order of the commission after a hearing upon a petition filed by defendant asking to put into effect a new uniform schedule of rates for such service; *third*, that no such order of the commission had been

made; and, *fourth,* that over the period for which recovery was sought defendant had charged plaintiff and its assignors rates greatly in excess of its schedule of rates in effect on January 1, 1911, which had been frozen by G. S. 1935, 66-130.

Naturally, plaintiff had the burden of proof upon each of these points, and first it had the burden of proving that on January 1, 1911, defendant had in effect a definite tariff for hotel branch exchange telephone service, uniform for all hotels, of 25 cents per 'phone per month, defendant furnishing and maintaining all the equipment. This plaintiff was unable to prove. Being unable to establish by evidence that fundamental premise, an adverse decision was inevitable.

In their brief counsel for appellant say "the defendant succeeded in the court below in failing to prove our case by their records." The statement finds such basis as it has in the following circumstance: Chapter 238, Laws of 1911, became effective May 22 of that year. The act created the "public utilities commission" and gave it jurisdiction over public utilities. On July 1, 1911, defendant filed with the commission its rate schedule, which did not include a schedule of rates for hotel private branch exchanges, but at the close of the schedule was this statement: "Hotel private branch exchanges: For rates, see supplemental instructions." No supplemental instructions were filed as a part of the rate schedule with the commission, and if so, it would not necessarily follow they were the same as on January 1, 1911. In this case counsel for plaintiff made a formal demand on defendant for a copy of the supplemental instructions, which defendant stated it did not have, and after diligent search was unable to find. Counsel for plaintiff also served a subpoena *duces tecum* on defendant to bring into court any correspondence, accounting records, or other documents as evidence of the charges and rates of January 1, 1911, for hotel telephone service. Defendant replied that it had no such record and could not produce it. Appellant cites G. S. 1935, 66-137, which provides a penalty for willfully falsifying, destroying, or failing to keep accounting records, but which authorizes the commission to permit certain records to be destroyed. This statute was not effective until several months after January 1, 1911, and has no application as to records of that date. Appellant uses this statute in connection with G. S. 1935, 60-2850, which provides:

"Either party or his attorney may demand of the adverse party an inspection and copy, or permission to take a copy of a book, paper or document *in*

*his possession or under his control* containing evidence relating to the merits of the action, or defense, . . . and on failure to comply with such order the court may exclude the paper or document from being given in evidence, or if wanted as evidence by the party applying may direct the jury to presume it to be such as the party *by affidavit alleges it to be.* . . ." (Italics inserted.)

It is clear from the record that before the trial, and during the trial, defendant's counsel denied defendant had "in its possession or under its control" any "supplemental instructions" such as referred to in its rate schedule which it filed with the commission on July 1; indeed, denied that such supplemental instructions had ever been prepared, or had existed; and further denied that defendant had "in its possession or under its control" any correspondence, accounting records, or other documentary evidence of the charges and rates of January 1, 1911, for hotel telephone service. Plaintiff filed no affidavit as to what it claimed was the contents of these papers. The nearest it came to doing so was in the allegation of its unverified petition, based entirely on information and belief, that certain rates existed. Hence, the application of these statutes and the procedure under them in this case furnish no evidence to plaintiff of what the rates were for hotel private exchanges on January 1, 1911.

Appellant argues that the contracts made by defendant with the hotels should have been filed with the commission, and quotes an excerpt from the opinion in the case of *Railroad and Light Co. v. Court of Industrial Relations*, 113 Kan. 217, at page 230, 214 Pac. 797, as follows:

"The contracts and contract rates, like all others, must be filed with the commission; . . . changes and modifications of such rates must similarly be filed, and to be valid must receive the sanction of the commission; . . . *but the commission may and sometimes does give its approval of such contracts,* and has done so" in certain contracts then being considered. (Italics inserted.)

Here the exhibits and other evidence before the court clearly disclose that beginning with the first rate schedule defendant filed with the commission, July 1, 1911, up until December 24, 1938, none of its rate schedules purported to include rates for hotel private branch exchange, but left those to be handled under such supplemental instructions as it might give from time to time to its managers and to private contracts. The documentary evidence clearly shows that the commission knew of that practice and consented to its being

handled in that way. There is an abundance of evidence to sustain the court's findings in these particulars.

The plaintiff and its assignors in this case made such contracts with the defendant. 'They knew, or if they had taken any trouble to inquire could have known, that such contracts had been uniformly made with the consent of the commission. The contracts contained features financially favorable to them and they. paid monthly bills rendered by defendant in harmony with those contracts. They are in no position to complain of them now.

The result is that there was no error in the trial court, and its judgment should be affirmed. It is so ordered.