No. 37,865

W. E. BEITZ, *Appellee*, v. (C. B. HEREFORD, R. T. HEREFORD, EMERSON A. RICH and FRED FISH, *Defendants*) C. B. HEREFORD and R. T. HEREFORD, *Appellants*.

(220 P. 2d 135)

Opinion filed July 8, 1950.

*T. F. Railsback*, of Kansas City, argued the cause, and *James W. Putnam*, of Emporia, was with him on the briefs for the appellants.

*Samuel Mellinger*, of Emporia, and *O. R. Stites*, of Oklahoma City, Okla., argued the cause, and were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for personal injuries. Plaintiff prevailed and defendants appeal.

Appellants, C. B. Hereford and R. T. Hereford, his son, were partners doing business as The Hereford Motor Company. They were engaged in the business of selling and repairing motor vehicles in a building located on the southeast corner of the intersection of Seventh and Merchant streets in the city of Emporia. Appellants rented the building from its owner, Katherine White, who under the terms of the lease was required to maintain the repairs on the exterior of the building including the entrance and exit doors. Emerson A. Rich was appellants' shop foreman and Fred Fish was their assistant foreman. Rich had notified C. B. Hereford the west entrance door to the building was out of repair. On or about a week before April 2, 1947, C. B. Hereford in turn notified C. C. Alexander, who looked after the repair of the building for the owner, that the door needed repairs. Alexander employed W. E. Beitz, appellee, to make the repairs. Appellee drove to the building to inspect the door at approximately 9:00 a. m. on April 2. On his arrival he parked his car at the west entrance door and to the north of the center of that door. He entered the building but found neither of the Herefords present. Rich, the shop foreman, was out testing an automobile on which work had been done. Appellee notified Fish, the assistant foreman, of his mission and Fish pointed out the west door as being the one in need of repairs. It was a double door but in two parts and so connected as to permit the doors to be opened separately or the entire door to be rolled up overhead.

A large spring approximately four and one-half to five feet long and three and one-half inches in diameter which helped lift the weight of the north half of the door was broken. The north part of this west door is referred to in the record as the "crippled" door and we shall so designate it. It appears the spring which was broken was the one at the south edge of the crippled door.

Evidence on behalf of appellee further, in substance, disclosed: After viewing the door appellee advised Fish it would require about two hours to fix it; as the assistant foreman of appellants it was the duty of Fish to direct the traffic so that it entered the west door and left through the north door of the building; appellee asked Fish if he would look after the traffic and see that the traffic did not enter the west door while the repair work was in progress and Fish agreed to do so; although Fish did not readily admit he had so agreed he did admit with reference to a question and answer contained in a previous investigation that he had then made the statement he would undertake to so regulate the traffic; although both the foreman and assistant foreman directed the traffic at different times the assistant foreman always directed it in the absence of the foreman; after examining the door appellee reported to C. C. Alexander at the Emporia Gazette office and they brought a large new spring to the building; the spring was laid in the driveway at the west entrance in front, just west, of the two doors; Alexander and appellee went to a restaurant for coffee and finding it closed appellee returned to his car which, as previously stated, had been parked west of the west entrance to the building; the car was west of the crippled door; he removed the tool chest from his car and placed it just west of the west doors and a little south of his car.

With the car, tool chest and spring left on the outside of the west doors, as indicated, appellee entered the building and asked Fish to call some of his men to help raise the door; Fish complied but the men were unable to raise it; appellee asked Fish for a ladder, which was provided; appellee first set the ladder against the crippled or north half of the west door but in that location he was unable to release the old spring and a chain hooked to it, which was jammed in the door track; in that position he was required to work left-handed; he then moved the ladder somewhat to the south so that a part of it was east of the south half of the door which was not crippled; the upper part of the ladder rested against a beam, a short distance from the doors.

While appellee was on the ladder in the position indicated Rich, the foreman, returned to the shop and started lifting the south half of the west door; Fish had neither placed a guard on the outside of the west doors nor had he locked the door; although customers honked a horn when arriving at the entrance door Fish knew it was the custom of employees not to honk a horn when they came to the entrance door; as Rich started raising the door appellee and the men on the inside hollered, "Hold it. Hold it"; Rich stopped raising the door momentarily and then gave it another lift; the door rolled up overhead, struck the ladder and threw appellee off, resulting in serious injuries.

The overhead doors were built in sections and hinged onto each other; there existed a row of glass panes approximately thirty inches from the floor and another row at the top of the doors; the top row of panes was nine feet from the ground; the top of the lower row of panes was forty-eight inches from the floor; each pane was eighteen inches square and there were three panes in each row; there was a wood panel on each side of the glass panels in the center of the two doors; the wood panels in the center of the entire door obstructed vision through the doors at that point; Rich was five feet seven inches tall; appellee had done work in the building previously and had been given some assistance by the men in the shop; it appears, however, that on such previous occasions they were not directed to do so by the shop foreman of the appellants but did so on their own accord.

Rich had reported to C. B. Hereford that the west door was in need of repairs; he knew a person making the repairs would be required to mount 'a ladder on the inside; he did not see appellee that morning and did not know there was a ladder standing on the inside; the first time he saw the ladder was when he stopped lifting the door and that was when the door was raised to about the level of his eyes; Rich testified, in substance, it would be difficult to see through the panes of glass unless a person put his hands against the glass and then he would not see very much; no one flagged him down before entering the door; there was no car, tools or anything else lying in the driveway in front of either of the west doors.

The foregoing is not intended to be a complete statement of the testimony of all witnesses but we think it supplies a sufficient general background for consideration of errors urged by appellants other than rulings on posttrial motions. Some additional detailed facts will be supplied under specific contentions.

We shall treat alleged errors in the order they were raised in the trial. Appellants contend their demurrer on the ground appellee's evidence was insufficient to prove a cause of action should have been sustained. On that particular point they assert it was not their duty but the duty of the owner of the building to make the door repairs. That point is conceded. The owner did employ appellee and he proceeded to make the repairs under the circumstances stated.

Appellants assert appellee made appellants' servants, except Rich, his employees; that they were under his direction and control as to the manner in which the work was to be done and, therefore, appellee, as their immediate and special employer, was responsible for their negligent acts. In support of the doctrine that a person may be a servant of a general master and at the same time be the servant and employee of a special master and that the special master will be liable for the negligence of such servant in the event the servant is at the time performing the work of the special master and is subject to his supervision and control, appellants cite: *Baker v. Petroleum Co.*, 111 Kan. 555, 207 Pac. 789; *Hurla v. Capper Publications, Inc.*, 149 Kan. 369, 87 P. 2d 552; *Moseman v. Penwell Undertaking Co.*, 151 Kan. 610, 100 P. 2d 669; *Smith v. Brown*, 152 Kan. 758, 761, 107 P. 2d 718, together with authorities cited in each of the foregoing cases; *Philadelphia & R. Coal & Iron Co. v. Barrie*, 179 Fed. 50; *The Standard Oil Co. v. Anderson*, 212 U. S. 215, 220, 53 L. ed. 480, 29 S. Ct. 252, and other similar cases.

Appellants concede Rich, the shop foreman, was not an employee of appellee. Appellee does not challenge the above authorities but denies Fish, the assistant foreman, or any other of appellants' servants, ever became his employees. Only appellants and their two employees, Rich and Fish, are claimed to have been negligent by appellee. Appellee asserts Fish was not subject to his supervision and control and performed no act in connection with the repair work that resulted in appellee's injury. He contends all that Fish did at his request was to bring a ladder and call some workmen to help lift the door and that none of them was charged with, or was negligent, in those respects.

Appellee further maintains: Fish at all times remained the employee of appellants and his negligence consisted entirely in his failure to perform his regular duties as an employee of appellants while he, appellee, was in the process of repairing the door; Fish's duty

to appellants, his employer, was to direct the traffic coming into and going out of the building; it was in connection with that duty to appellants that Fish agreed to protect appellee by keeping the traffic from coming into the west entrance while the repair work was in progress and that Fish failed to perform his duty in that regard; appellee had no right, and made no attempt, to direct or control the manner in which Fish, appellants' employee, performed that duty; appellee had no right to hire or discharge Fish; appellants were at all times in possession and control of the premises, permitted the repairs to be made without suspending business and were negligent in not having seen to it that all traffic would be routed away from the west door whenever the repair work was to be done.

Appellants direct our attention to evidence of the appellee's witness, Fish, who testified that appellee ordered and commanded him (Fish) to get a ladder and some workmen to help lift the door. Counsel for the parties devote considerable space to an argument whether appellee commanded and ordered Fish and other employees to do the acts mentioned or whether he merely made a request that they do so. We shall not labor the point. One of the real tests as shown by authorities relied on by appellants, and previously cited, as to whether the relationship of master and servant exists is not whether one alleged to be a master may have exercised some supervision and control over an alleged servant but whether he actually had the right to exercise such control and supervision. Under the evidence in this record it cannot be said, as a matter of law, Fish was the employee of appellee rather than of appellants. That conclusion will readily appear from an examination of the cases last cited herein and the following: *Garner v. Martin*, 155 Kan. 12, 122 P. 2d 735; *Lowell v. Harris*, 24 C. A. 2d 70, 74 P. 2d 551; *Mansfield v. Andrew Murphy & Son*, 139 Neb. 793, 298 N. W. 749; 35 Am. Jur., Master and Servant, § 541. For treatment of subject of various tests applied in determining whose servant an employee is at a given time see, also, *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868. Where a reasonable doubt exists relative to whose servant or employee a person is the question should be submitted to the jury under proper instructions. (35 Am. Jur., Master and Servant, § 541, p. 971.)

The trial court submitted to the jury the question of whose servant Fish was. The jury found appellants were responsible for the acts of their agent and employee, Fish, by reason of his "Negligence in

directing traffic." (Finding 7c.) We think that concludes the matter insofar as Fish is concerned.

The jury, however, also found appellants were responsible for the negligence of their agent and employee, Rich, the shop foreman, "For opening door on which ladder was in contact" (finding 7b) and that, "He should have known" appellee had arrived to repair the north unit of the west entrance doors. (Finding 2.)

Appellants do not contend Rich was appellee's employee or that he was not engaged in the regular course of his employment for appellants when he attempted to enter the building. They insist there was not sufficient evidence of his negligence to submit that question to the jury. It is true no one had specifically told Rich appellee was on the ladder repairing the door before Rich started to open the door. It is also true Rich had not seen appellee previously that morning. Rich, however, did know the door was out of repair. He had notified his employer of that fact and his employer ordered the repairs. According to the evidence Rich knew it was necessary for appellee to get onto a ladder in order to repair the door. The broken spring was to be replaced at the south side of the crippled door. That point, of course, was immediately adjacent to the south unit of the west door through which Rich entered. A number of witnesses testified they had seen appellee's car, prior to the accident, at the west door entrance. They said they had also seen the large spring four and one-half or five feet long and three and one-half inches in diameter lying in the driveway just west of the door. They had also seen the tool chest on the driveway south of the car. These had not been moved when Rich entered. Rich testified he did not see any of them. The jury apparently did not believe that testimony or believed it was negligence not to observe these warnings. The jury also may have believed that in the presence of these warnings Rich should have taken the precaution of looking carefully through the windows before raising the door.

Moreover, appellee was not knocked off the ladder when Rich first partly raised the door. When Rich started to raise the door there were calls from within, "Hold it. Hold it." After a moment Rich lifted the door higher and appellee was then knocked off the ladder. Persons might differ as to whether Rich reasonably should have known someone was working on the door or might be in a position of danger. Under such circumstances the question was properly submitted to the jury. It found Rich should have known appellee

had arrived to repair the door. (Finding 2.) This finding will be considered later in another connection and more need not be said concerning it now.

Appellants also assert the demurrer to the evidence should have been sustained on the ground it disclosed appellee was guilty of contributory negligence. They direct attention to certain inconsistent statements of appellee with respect to whether he knew the west door was locked. On demurrer a court does not consider or weigh conflicting evidence but considers only evidence most favorable to the party adducing it. (*Hurla v. Capper Publications, Inc.,* supra.)

Appellants emphasize the fact appellee testified he did not lock the door, was not certain the door was locked and had not seen Fish put a guard on the outside. The substance of appellee's evidence considered in the light most favorable to him was that he was not familiar with the manner in which the door could be locked; he believed the south part of the west door was locked or that Fish would see to it that no one came through it; he relied on Fish's agreement to protect him and he did not try to direct the manner in which Fish would produce that result.

The record does not indicate appellee was familiar with the lock or its location. Fish was familiar with it and testified there was a good lock on the door and it was operated from the inside by simply turning the handle. There were also testimony the door could be unlocked from the outside with a key and that merely locking it would not have prevented Rich from entering. There was no evidence appellee was familiar with the custom of the business to have employees come through the entrance door without first honking a horn although Fish knew that to be the practice. The question of contributory negligence is for the jury when it arises upon a state of facts from which reasonable men might draw different conclusions either as to the facts or inferences to be drawn therefrom. (*Deardorf v. Shell Petroleum Corp.,* 136 Kan. 95, 98, 12 P. 2d 1103; *Harshaw v. Kansas City Public Ser. Co.,* 154 Kan. 481, 119 P. 2d 459; 38 Am. Jur., Negligence, § 348.) A person, of course, need not anticipate negligence and failure to anticipate it does not constitute negligence which will defeat an action for injury sustained. The contention appellee was guilty of negligence, as a matter of law, cannot be sustained.

The jury made the following special findings:

"No. 1. Did either of the defendants, C. B. Hereford and R. T. Hereford, doing business as Hereford Motor Sales, know that the plaintiff was upon their premises and in their garage at the time he claims to have been injured? A. No.

"No. 2. Did the Shop Foreman Emerson A. Rich know that the plaintiff had arrived to repair the north unit of the west entrance doors, when he drove up and undertook to open the south entrance door? A. He should have known.

"No. 3. Prior to the time the Shop Foreman Emerson A. Rich undertook to open said overhead door by raising it, was he notified in any way that the plaintiff was on the inside of said building and on the ladder directly in front of said door? A. No.

"No. 4. Could the plaintiff have locked the south unit of the west entrance doors to the defendants' garage before going up on the ladder in front of it? A. Yes.

"No. 5. Who placed the ladder in front of the south unit of the west entrance doors? A. W. E. Beitz.

"No. 6. Before he started to ascend said ladder, did the plaintiff do anything to warn the public or the shop foreman or anyone else, from using said south unit of the west entrance doors, or to prevent their opening the same? A. Yes.

"No. 7. If you find for the plaintiff, please state in detail, the specific act or acts of negligence which you find have been proven:

"(a) Against the defendants C. B. Hereford and R. T. Hereford individually? A. For being responsible for their agents or employees.

"(b) Against the shop foreman Emerson A. Rich? A. For opening door on which ladder was in contact.

"(c) Against the assistant shop foreman Fred Fish? A. Negligence in directing traffic.

"(d) Against any of the workmen other than the two foremen employed by defendants in their garage and automobile shop? A. None other than in A B & C.

"No. 8. At the time Emerson A. Rich, the shop foreman, drove up in front of the west entrance doors, did he know that the north of said doors was out of repair? A. Yes.

"No. 9. At the time Emerson A. Rich, the shop foreman, drove up in front of the west entrance doors, did he know that the owner of the building had been called to make repairs on the north entrance door on the west side of the building? A. Yes.

"No. 10. At the time Emerson A. Rich, the shop foreman, drove up in front of the west door, did he know that it would be necessary for whomever repaired said door to mount a ladder in front of said door? A. Yes.

"No. 11. At the time said shop foreman drove up in front of the west entrance doors and opened the south one thereof, did he know that the repairs which were necessary consisted of replacing a broken spring on said door? A. Yes.

"No. 12. At the time the shop foreman, Emerson A. Rich, drove up to the west entrance doors and got out of the car he was driving and undertook to open the south entrance door, was plaintiff's car and the spring and plaintiff's tool box in front of such doors? A. Yes.

"No. 13. At the time of the alleged injury to plaintiff was the Shop Foreman, Emerson A. Rich, familiar with the design and type of spring which was necessary to replace the one on the door which was broken? A. Yes.

"No. 14. If the door which was opened by the shop foreman, Emerson A. Rich, had been locked on the inside, could it have been unlocked and opened from the outside? A. Yes.

"No. 15. If you answer number 14 in the affirmative, how could it have been unlocked from the outside. A. Key."

Appellants assert the court erred in not striking out findings 2 and 6 in response to their motion which was on the grounds the answers were contrary to the evidence, were not supported by the evidence, violated the instructions of the court, were not complete and did not constitute understandable and intelligent answers.

We have previously discussed the evidence pertaining to findings 2 and 6. It cannot be said there was no evidence to support them. The court instructed the jury as follows:

"You are not required to answer each question submitted to you by a 'yes' or 'no,' but your answer when made should be a full and complete answer to each specific question propounded to you."

Answer 6 did not violate the foregoing instruction. Answer 2 cannot be said to be meaningless or to violate the instruction by reason of its failure to answer "Yes" or "No." In the light of the evidence answers 2 and 6 were both understandable. Answer 2 was quite complete especially when considered in connection with the related question and answer 12. Answer 6 was also understandable in view of the agreement appellee had made with Fish in which Fish agreed to see that no traffic would come through the west entrance. Then, too, question 6 did not require the jury to say what appellee had done. Furthermore we find no request to have answers 2 or 6 made more specific or complete before the jury was discharged.

We now reach appellants' contention judgment should have been rendered in their favor on their motion for judgment on the special findings and the pleadings. For the purpose of a ruling on that motion all the answers are admitted to be true. No reference was made in this motion to anything contained in any of the pleadings which entitled appellants to judgment and it was not indicated on what ground the pleadings and special findings combined entitled appellants to judgment.

It is argued finding 3 entitled appellants to judgment in their favor. Standing alone that finding would indeed present a serious question. That all findings must be considered and construed together with a view of harmonizing them if reasonably possible to do so is too well established to require citation of authority. When finding 3 is considered with findings 2, 7b and findings 8 to 13, inclusive, what did the jury intend to say by finding 3? We think it must have intended to say no one had directly informed Rich appellee was on the ladder in front of the door. By reason of all the answers we think the jury clearly intended to say Rich was not absolved of negligence. That interpretation harmonizes the findings with each other and with the general verdict. Finding 3 together with all other related findings does not compel nullification of the general verdict and rendition of judgment in favor of appellants.

Appellants maintain the findings convict appellee of contributory negligence. It is true finding 5 discloses appellee placed the ladder in front of the south unit of the west entrance doors. The necessity for moving the ladder to that position has been previously narrated and those facts need not be repeated. It is also true the jury said appellee could have locked the south unit before ascending the ladder. (Finding 4.) The jury, however, also found if appellee had locked the door it could have been unlocked and opened by Rich from the outside had he chosen to do so. (Findings 14 and 15.) As previously stated appellee relied on the agreement he had made with Fish that the latter would see to it that no one entered through the west doors. The jury expressly found appellee had done something to warn Rich and others from entering before he ascended the ladder. (Findings 6 and 12.) We cannot say from the findings the jury intended to say appellee was obliged to anticipate Rich would fail to observe the warnings placed in front of the west entrance. The jury found to the contrary. (Finding 2.) There is no finding appellee should have anticipated Fish would violate his agreement to keep the traffic from entering. As previously stated, no direct question was submitted to the jury on the question of appellee's contributory negligence. The general verdict in his favor absolved him of negligence. The special findings considered as a whole do not compel a contrary verdict.

Appellants stated the court erred in the giving of certain instructions and in refusing to give instructions they requested. If special objections were made to instructions given we have not found them.

In any event in view of the instructions appellants requested we have examined the instructions given together with those requested. On the whole we think the instructions given were broad enough to cover the issues actually tried and were sufficiently accurate to prevent a reversal of the judgment.

We come now to a subject which, in fairness to counsel for appellants, we should say they have discussed in their brief under most of the contentions heretofore treated. It pertains to a motion by appellee to dismiss the action against Rich and Fish who originally were also named as defendants with the Herefords and to a judgment dismissing the action against Rich and Fish with prejudice at the costs of appellee. That motion and judgment were filed August 23, 1948, in the absence of appellants' counsel. Trial of the action was not begun until November 15, 1948. Appellants argue they had no notice of the judgment of dismissal when entered. Counsel for appellee contend otherwise although the record does not disclose appellants were notified. Appellants, however, had local counsel. Just when both attorneys for appellants were first apprised of the indicated dismissal we frankly do not know. Their opening statement discloses they knew about it at that time.

No request was then made to amend appellants' answer in any particular. No contention was then made relative to the effect of such dismissal on the action against the Herefords. Although it is suggested by appellants' counsel that one of them thought he had raised that point in the argument on the demurrer to appellee's evidence he conceded with commendable frankness he was not certain he had done so. The record fails to disclose appellants had raised the point and the trial court was certain the point was raised for the first time on the first hearing of the posttrial motions December 22, 1948. The hearings on the posttrial motions were continued and on March 29, 1949, counsel for appellants for the first time asked leave to amend their answer to set forth the fact of such dismissal as to Rich and Fish.

Without intimating the legal effect of such a defense had it been pleaded or orally asserted during the trial, it is the well established practice in this jurisdiction that the making of belated amendments to pleadings rests in the judicial discretion of the trial court. This rule is particularly applicable where a party seeks to amend his hold and to that extent shifts the ground of his defense. (*Keil v. Evans,* 99 Kan. 273, 161 Pac. 639; *Haggart v. King,* 107 Kan. 75, 190 Pac.

763; *Tri-State Hotel Co., Inc., v. Southwestern Bell Telephone Co.*, 155 Kan. 358, 125 P. 2d 728; *Slaton v. Union Electric Ry. Co.*, 158 Kan. 132, 141, 145 P. 2d 456.)

·The rule applies with special force where there is a trial by jury. Here the case was fully tried by a jury on entirely different issues. The jury was fully instructed on the issues tried. Appellants made no request the jury be instructed the action had been dismissed as to Rich and Fish or touching the effect of the dismissal. On the other hand if the effect of the dismissal presented only a question of law that point was not raised until long after the verdict had been rendered.

This court has studiously examined the numerous authorities presented by the industry of counsel on both sides touching the effect of a dismissal of an action as to agents and servants of defendants, employers, who are all charged as tort-feasors and also cases where the employers are not so charged and their liability, if any, is solely a derivative one, that is, where the employers' liability rests solely on the negligent acts of their agents and servants. Here the petition charged the Herefords, Rich and Fish with negligence. Had appellants contended at the trial and persuaded the trial court that in view of the dismissal of the action against Rich and Fish there could be recovery only by reason of the negligent acts of the Herefords, manifestly the instructions to the jury and the special questions submitted to it would have been entirely different. That did not happen. The case has been tried on a different theory and we are obliged to review the record on the theory on which the case was tried and the verdict was rendered.

The judgment is affirmed.