No. 23,819.

CORA BAKER, *Appellee*, v. THE MAGNOLIA PETROLEUM COMPANY,
*Appellant.*

SYLLABUS BY THE COURT.

1. COLLISION—*Automobile and Truck—Injuries—Demurrer to Plaintiff's Evidence Properly Overruled.* Certain evidence considered and held competent.

2. SAME. In an action to recover damages against defendant caused by a collision between an automobile in which the plaintiff was riding and a truck used in the business of the defendant, *held,* there was no error in overruling a demurrer to the evidence.

3. SAME—*Whether Driver of Truck was Servant of Defendant was Question for the Jury.* The defense to the action was that the truck belonged to an independent contractor who was engaged in the truck business and under a contract furnished the truck and driver and the gasoline, for which the company paid him twenty dollars a day. The defendant's evidence showed that it was an oral contract and that nothing more was said than that the company wanted the truck to go to its leases wherever the work was being done. Sometimes one driver was sent by the owner of the truck and sometimes another. The driver reported each morning and gathered up the men in the employ of the defendant and hauled them from town to the place in the country where the defendant was laying a pipe line. The driver stayed at the pipe line and was sent occasionally for drinking water, and transported the tools from place to place. He was sometimes sent back to town on errands. The defendant's testimony tended to show that the boss of the gang of workmen gave the driver no directions as to the way he drove the truck. The driver himself testified that the boss who had charge of the gang directed the operation of the truck and told him what to do and where to go, and when. *Held,* that the question whether the driver of the truck was a servant of the defendant (although he continued to be the general servant of the contractor and paid by the latter for his work) was a question for the jury to determine from a consideration of all the circumstances under which the truck was hired and used.

4. SAME. The contract by which the truck and the driver was hired being oral, *held,* that where the evidence is conflicting or where different inferences might well be drawn from the testimony concerning the oral contract, the matter was properly left for the jury to determine.

5. SAME—*Facts Which Would Make Defendant Liable for Negligence of Driver of Truck Properly Stated in Instruction.* On the facts stated in the opinion, *held,* that an instruction was proper which charged that if the jury should find from the evidence that the defendant employed or hired a truck with a driver from the owner of the truck, and under the terms of the hiring was to have general charge and control of the truck and driver and to direct generally the work to be done, the time and manner of its doing, and to have full and complete control of the operation of the work it should direct to be

done by the truck and driver, the defendant would be liable for damages sustained as a result of the driver's negligent acts when using the automobile in the service of the company.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed June 10, 1922. Affirmed.

B. R. Leydig, K. M. Geddes, E. W. Grant, all of El Dorado, B. B. Blakeney, Hubert Ambrister, both of Oklahoma City, Okla., and J. H. Maxcey, of Tulsa, Okla., for the appellant.

J. M. Pleasant, and George J. Benson, both of El Dorado, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Cora Baker was a passenger in an automobile owned and driven by her brother on the public road from Augusta to Douglass. She received serious injuries as a result of a collision between the automobile and a truck used in the business of the defendant. She brought suit alleging that the truck belonged to the defendant; that the driver, Fred Howard, was in defendant's employ, and that the collision occurred by reason of the negligent operation of the truck and the negligence of the company in using a truck with a defective brake. The answer was a general denial; also a verified denial that the driver was in the employ of the defendant, and alleged that the truck was owned and operated by an independent contractor. As a further defense it was alleged that certain negligence of the driver of the automobile was imputed to the plaintiff. Issues were joined and there was a trial with a verdict in plaintiff's favor for $3,860.42. The court reduced the verdict to $2,600, to which plaintiff consented. Judgment was rendered, and the defendant appeals.

The plaintiff's evidence was sufficient to sustain a finding that she was riding as a guest of her brother who owned the automobile, and that the collision occurred through the negligent manner in which the truck was driven and because the brakes were out of repair; that the brakes had been in that condition for a considerable length of time. There was evidence also to show the nature and character of her injuries and to support a finding that she was not guilty of contributory negligence.

The first assignment of error relates to the admission of testimony. Haney, a witness for plaintiff, testified that he was on the truck; the accident occurred about four miles north of Augusta. He was then asked:

Baker v. Petroleum Co.

"Q. Are you acquainted with Mr. Crowley, the boss? A. I worked for him for a while.

"Q. State whether or not he was the boss in charge of this car?"

The question was objected to as assuming a fact not proven and calling for a conclusion and opinion of the witness, and misleading. The objection was overruled.

"A. He was in charge of the gang, but Porter Parrish was over him. He was in charge of the gang for the day. Parrish was not there."

Regardless of the form of the question it may be said that the answer to the effect that Crowley was in charge of the gang could not have prejudiced the defendant. The same objections were made to the following question: "State whether or not he directed the operations of the truck?" The answer was: "He told the truck what to do that was on the works."

. It is insisted that the question was objectionable because the witness was not asked to state what Crowley did, but to state whether Crowley was in charge of the truck, which was one of the particular questions which the jury would be called upon to determine from the facts; not from the opinion of the witness. We think it was proper to show that Crowley was in charge of the gang riding on the truck and directed generally the operations of the truck. Upon cross-examination this witness testified that there were about thirty-five men on the truck; it had a trailer on it. Fred Howard was driving the truck; Wheeler owned it. "I did not say that the Magnolia owned the truck. The Magnolia had the truck hired. I don't know who Howard was working for."

Another witness testified that a few days before the accident they were on a grade out of town two or three miles from Augusta, "and this truck driver, his engine went dead, and as soon as it went dead, he said to put rocks under the wheels to stop it running down hill, and another occasion I saw him put it across the road to keep it from running down hill." There was testimony showing that the truck was used for "company work," hauling men and tools and stuff on the pipe line.

It is true the petition alleged that the truck belonged to the defendant and was driven by one of its employees, but the evidence shows that the truck was used in the company's business, the work of which was under the control and direction of a foreman of the company. For these reasons we think there was no error in overruling the demurrer to the evidence.

The evidence introduced by the defendant showed that the truck belonged to C. C. Wheeler, who was engaged in the truck business and doing contract work. The company agreed to pay him $20 a day for the truck and driver, and Wheeler was to furnish the gasoline. The contract was oral, and nothing more was said except that the company wanted the truck to go to its leases wherever the work was being done. The driver was to report to the bunk house and get the men in the morning, a mile west of Augusta. Sometimes Wheeler himself drove the truck; sometimes one driver, and sometimes another. The driver stayed at the place where the pipe line was being laid, and was sent for drinking water and to keep the tools gathered up. The tools were along the pipe line. Sometimes he was sent back to Augusta for something.

Porter Parrish, a witness for the defendant, testified that every morning when the weather was fit to work, the truck appeared in charge of some driver; the truck would leave the bunk house about seven o'clock in the morning. It would take from one to two hours to get out to the lease; the men started back generally about four-thirty; the truck driver stayed out on the lease. All he did after he got there was to get drinking water and keep the tools gathered up. "I think a few times he went back to Augusta for something." Another witness for the defendant testified that his duties at the lease were to "pick up the tools and take them where the gang was; the tools left along the line. . . . I loaded them on the truck; after they were loaded, the driver drove the truck; . . . when we wanted water for the men I took the truck and went after it; I didn't drive it."

Crowley, who was boss of the gang on the morning of the accident, testified that Howard was not working for the defendant company; he was working for Wheeler. "I gave him no directions of any kind as to the way to pursue or the method to drive the car; the road was out there and he knows the way out and I didn't have nothing to do with it. I had no directions over him, no more than to ask him to do something; he knew about the work he had to do. Whatever arrangements was made when he was hired. All I could ask him to do was to go and get a barrel of water or something like that. . . . It was Wheeler's truck; Wheeler done the hiring and if he broke down, Wheeler went and got another truck without any bother at all."

Fred Howard, who was driving the truck, was asked this question:

"Mr. Howard, you may state to the jury in driving this truck, who directed

the operations of the truck and told you where to go and what to do and when?"

An objection was overruled.

"A. Well, the boss that had charge of the gang I had taken out; either George Crowley or Porter Parrish."

Among the instructions given by the court was No. 4, which charged in substance that before plaintiff could recover she must establish by a preponderance of the evidence that her injuries were sustained as a result of the negligent or careless acts of the defendants or of some of its agents or employees, "and you must find in this case . . . that the driver of the truck . . . sustained the relationship of an employee to the defendant before you can find the defendant liable in damages to the plaintiff."

Instruction No. 5 reads:

"You are instructed that where a person hires or rents an automobile, or an automobile truck with a driver in charge for the purpose of transportation or conveyance and in consideration of the payment of a certain sum per day or per week for the time for which said automobile or automobile truck with the driver in charge is rented or hired, such person has a right to direct said driver as regards where to go, what route to take, when to start, when to return, and in so doing does not become charged in any responsibility or liability for the acts or negligence of the driver in charge of said car."

Instruction No. 6 reads:

"You are instructed that where a person hires or rents from another an automobile and driver thereof for the purpose of conveyance or transportation and gives directions to the driver, as to the place or places where he desires to be conveyed or transported and as to the time or times when such transportation or conveyance shall be done, but gives no special directions as to the mode or manner of driving, he is not responsible for the acts or negligence of the driver; and you are further instructed that under no circumstances can such person be responsible for the acts or negligence of the driver unless he interferes with, and controls by his own commands and requirements, the manner and method and mode of handling such automobile."

Instruction No. 7 reads:

"If you believe from the evidence in this case that the defendant entered into an agreement with one C. C. Wheeler by the terms of which the said C. C. Wheeler, in consideration of a certain sum per day, to be paid to said Wheeler by the said defendant, was to furnish an automobile truck and driver to the defendant for the purpose of transporting defendant's men and material from the City of Augusta, Kansas, to its leases and from its leases to the City of Augusta, Kansas, and that in pursuance of said agreement said C. C. Wheeler did furnish an automobile truck and driver, and that while

said driver of said truck was engaged in said work of transporting the said defendant's men or materials from Augusta to the leases of defendant, an injury was occasioned to the plaintiff as the result of a collision with said truck, then in that event plaintiff would not be entitled to recover as against the defendant, and your verdict should be for the defendant."

The defendant makes no complaint of the foregoing instructions which indeed are most favorable to the defendant; but does complain of instruction No. 8, which reads as follows:

"You are instructed that if you should find from the evidence that the defendant employed or hired a truck with driver from one C. C. Wheeler, and that under the terms of said hiring the defendant was to have general charge and control of the truck and driver and to direct generally the character and kind of work to be done, the time and manner of its doing, and to have full and complete control of the operation of the work that it should direct to be done by the truck and driver, then the defendant would be liable for any damages sustained as a result of the negligent acts of the driver, of said automobile when using it in the service of said company."

It is insisted that the evidence furnished no basis sufficient to warrant the jury in drawing an inference that the facts stated in the instruction existed. On the contrary, we think the evidence justified an inference on the part of the jury that, notwithstanding the defendant employed a truck hired from Wheeler, the defendant was to have general charge of the truck and driver; was authorized to direct generally the character and kind of work to be done, and had full and complete control of the operations of the work it might direct to be done by the truck and driver. There was evidence sufficient to justify a finding that the driver took his general orders from the boss or foreman of the gang of workmen; that is to say, that the foreman had general charge and control as to when and where the truck should go, and complete control of the work the defendant directed to be done. This instruction it will be noticed places emphasis on the fact, if proven, that the defendant controlled all the time the operations of the *work* performed by the truck and driver. It is well settled that the servant of A may for a particular purpose, or on a particular occasion, be the servant of B, though he continues to be the general servant of A and is paid by him for his work. 1 Labatt's Master and Servant, 2d ed., §§ 52-57, cites the language of Mr. Chief Justice Cockburn in *Rourke v. White Moss Colliery Co.*, L. R. 2 C. P. Div. 205:

"When one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." (p. 209.)

In the opinion in *Standard Oil Co. v. Anderson*, 212 U. S. 215, 220, it was said:

"One who employs a servant to do his work is answerable to strangers for the negligent acts or omissions of the servant committed in the course of the service. The plaintiff rests his right to recover upon this rule of law which, though of comparatively modern origin, has come to be elementary. But, however clear the rule may be, its application to the infinitely varied affairs of life is not always easy, because the facts which place a given case within or without the rule cannot always be ascertained with precision. The servant himself is, of course, liable for the consequences of his own carelessness. But when, as is so frequently the case, an attempt is made to impose upon the master the liability for those consequences it sometimes becomes necessary to inquire who was the master at the very time of the negligent act or omission. One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with· his own consent or acquiesence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the· new relation."

In *Philadelphia & R. Coal & Iron Co. v. Barrie*, 179 Fed. 50, 102 C. C. A. 618, it was held:

"Where defendant, a coal dealer, in delivering coal from its yards to customers, hired from another dealer a team and a driver in the latter's general employ, paying a stipulated sum per hour for their services, and having full control and direction of the work and the method of its performance, the driver, while engaged in such work, was a servant of defendant, which was liable for an injury to a third person caused by the driver's negligence in its performance." (p. 51.)

(See, also, Scribner's Case, 231 Mass. 132; 20 N. C. C. A. 302, 304.)

It cannot be said as a matter of law that the negligence in this case was that of an independent contractor; that and the other questions submitted were for the jury to determine from a consideration of all the circumstances under which the truck was hired and used. If different inferences concerning the contract and use of the truck may be drawn from the testimony, the finding of the jury is controlling.

"In the case of an oral contract, if there is no material dispute in the testimony, whether the employee is an independent contractor may present a question for the court; but where the evidence is conflicting, or where different inferences may well be drawn from the testimony concerning the oral contract, the matter is one for the jury to determine." (14 R. C. L. 79.)

The mere fact that the foreman of defendant neglected to exercise control over the manner and method in which the truck was driven along the highway, or that he neglected to see that the truck

was equipped with brakes sufficient to control it, does not determine the question of whether the owner of the truck was an independent contractor; nor would that fact prevent the defendant from being liable for an injury to the plaintiff caused by the negligent manner in which the truck was equipped and controlled. Previous to the accident the company, through its foreman, knew that the truck was not properly equipped with brakes and for that reason, could not always be controlled. The duty the company owed to other travelers on the highway required it to insist that a truck employed in its business should be properly equipped with brakes and handled by a reasonably careful driver. There was no error in refusing to grant the motion for a new trial.

The judgment is affirmed.