No. 28,243.

FRANK RUTKOWSKI, *Appellee*, v. THE J. I. CASE THRESHING MACHINE COMPANY, *Appellant*.

(270 Pac. 599.)

Opinion filed October 6, 1928.

W. D. Jochems, J. Wirth Sargent, both of Wichita, O. D. McCollum and G. A. Aucoin, both of Kansas City, Mo., for the appellant.

S. S. Alexander and H. E. Walter, both of Kingman, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Frank Rutkowski brought this action against The J. I. Case Threshing Machine Company to recover damages for personal injuries suffered by him through the alleged negligence of the defendant. A verdict awarding damages to plaintiff in the sum of $2,000 was returned by the jury, upon which judgment was rendered. The defendant appeals.

It appears that plaintiff, a farmer living near Murdock, in Kingman county, ordered a harvesting thresher, commonly called a combine, from the defendant, a manufacturer of such machines. The order was made direct to the defendant and was handed to Robert Stoehr, a local hardware merchant at Murdock, who was aiding the defendant in the disposition of combines. The order was forwarded to the branch house of defendant at Wichita, and was accepted by Ahlberg, the agent of the defendant, and the combine was transported to plaintiff's farm. Shortly afterwards, H. F. Cobb, an expert machinist, was sent out by Ahlberg to supervise and set up this and other combines sold in that community. It was the general policy and custom of the company to send experienced help to set up machines of this kind and make them ready for operation. Cobb set up the plaintiff's combine and when he deemed it to be complete he said to plaintiff, "Well, we will start the motor," and he directed plaintiff to crank or start it. Plaintiff at first declined, but Cobb said, "You have got to learn it sooner or later anyhow, it is all ready to start." Plaintiff then undertook to start it, which resulted in an explosion or two and the motor stopped. Cobb advised

a further effort, saying that "it would go the next time, and that it was safe," and on the next effort the motor kicked back and the handle struck plaintiff's face destroying his right eye, fracturing the bones of his face and causing other serious injuries. There was a safety device ·called an impulse starter, designed to prevent the kicking back of the crank, but Cobb had not adjusted this device. Plaintiff did not know anything about this mechanism and Cobb had not only failed to adjust it, but had not advised plaintiff concerning the device or the danger of cranking when the device was not set. There is no contention as to the character and extent of the injuries suffered by plaintiff. Defendant says the only issue involved in the appeal is whether Cobb was the agent of the defendant or the agent of the local dealer, Stoehr, at the time the injuries were sustained by plaintiff.

It was a clear case of negligence to undertake to start the motor or to direct the plaintiff to start it without adjusting and setting the safety device, and the question is, was it the negligence of defendant's agent? The defendant contends that as nothing was said in the order of purchase as to the setting up of the machine or that defendant would furnish an expert to do so, and that as the contract provided that no local dealer or any other person had any authority to waive, alter or enlarge the contract, it was not responsible for the negligent acts of Cobb. It was shown that defendant had a contract with Stoehr to the effect that defendant would not be bound by the acts of Stoehr's employees or for any person in Stoehr's service, and that for any default or misconduct of such employees who assist the dealer in soliciting sales, exhibiting samples or on other work, they should be regarded as Stoehr's employees while so working. It will be noted that plaintiff knew nothing of this contract between the defendant and the local dealer, and it may be questioned whether the testimony as to that contract was admissible unless knowledge of it was brought to the attention of the plaintiff. As we have seen, the order was made direct to the defendant and not to Stoehr. While it was handed to and forwarded by Stoehr to the defendant, the contract was made between plaintiff and the defendant direct. It was not made between Stoehr and the plaintiff. Stoehr had informed plaintiff that the defendant would send out an expert to set up and start the combine. Cobb was employed, as we have seen, and was sent out by defendant to supervise the setting up of the machine it sold to plaintiff. There were six or eight of such

combines to be set up in that community and Stoehr provided for the transportation of Cobb from one place to another where machines were to be set up. One or two of Stoehr's men helped Cobb in the process and plaintiff was present when the combine was assembled and set up, but Cobb was the expert and in control of the process. He was employed by the defendant, was sent out by the defendant and his wages for the service were paid by the defendant. There was testimony to the effect that it was the common practice for the defendant to send out an expert to supervise the setting up of the machines. Stoehr said he did not direct Cobb in setting up the machine sold to plaintiff, and was not even present when it was done. The contract of defendant with Stoehr provided, it is true, that defendant should not be bound by the acts of the dealer's employees, but the negligent act was not performed by an employee of the dealer. It was the default of Cobb himself that caused the injury, and under the evidence he cannot be considered as the employee of Stoehr. Cobb testified that he entered the employ of defendant in May of 1926, as setting up and service man. Following his employment and during the month of June he set up about twenty-eight machines, and then was sent to western Kansas, where he set up fifty-two machines. In his testimony he said that he instructed plaintiff as to the use of the safety device, and he denied that he had made a statement shortly after the accident that it was too bad that he had failed to adjust or set the impulse starter, but there was evidence to the contrary which the jury chose to believe.

Defendant cites authorities to the effect that a servant may be loaned by a master to a third person, and when that is done such servant becomes the servant of the third person with all the legal consequences of the new relation. (*Phillips v. Armour & Co.*, 108 Kan. 596, 196 Pac. 245; *Baker v. Petroleum Co.*, 111 Kan. 555, 207 Pac. 789; 39 C. J. 1274.) But the evidence does not show that Cobb was loaned to Stoehr or that he was hired to him. Stoehr did not have control of the operation and had no authority to direct the kind of work to be done by Cobb. Nor did Cobb look to Stoehr for direction as to the manner of doing the work assigned to him, but rather he was directed to take charge of the work and fulfill the obligation assumed by the defendant of setting up the machine. Cobb was not only selected and employed by the defendant for this work, but it was done in furtherance of its business. Selection alone is not sufficient to give rise to the relation of master and servant, but this

right must be accompanied by the power and duty of control. The power to direct what work shall be done and the manner of performance is said to be one of the principal tests of the relationship. It has been said that:

"To constitute the relation of master and servant for the purpose of fixing liability on the former for acts of the latter under the doctrine of *respondeat superior*, it is indispensable that the right to select the person claimed to be a servant should exist. Furthermore something more than the mere right of selection is essential to the relation. This right must be accompanied with the power and duty to control the alleged servant while in his employ; this, it is said, is one of the principal tests of the relation. . . . It is also essential to the relation of master and servant that the right to remove for unskillfulness, neglect of duty, or other cause, should exist." (39 C. J. 1269, 1270.)

A case closely in point is *Tuttle v. Farmers Handy Wagon Co.*, 124 Minn. 204, where a silo was sold to a farmer and shipped to him in a knocked-down condition and the farmer hauled it out to his farm. The seller had agreed and assumed the obligation to furnish an expert to superintend the erection of the silo. He was sent to the farm for that purpose by the seller and was assisted in the erection of the silo by men furnished by the farmer. The expert who was employed by the seller took full charge and control of the work. In doing the work plaintiff was precipitated to the ground from the top of the silo through the negligence of the expert and suffered severe injuries in the fall. It was claimed by the seller that the expert had been loaned to the farmer and that the expert and those assisting him were all the servants of the farmer. The court held that although the seller had not contracted to erect the silo, it had agreed and assumed the obligation to furnish a man to superintend its erection. The farmer had no voice in the selection of the expert, nor any control over him. He was sent to take charge of and direct the work in fulfillment of the obligation assumed by the seller, and it was held that he was not only an employee of the seller but was engaged in the business of the seller while performing the duties assigned him in the erection of the silo. The court said:

"It seems clear that he was not only an employee of the company, but also engaged in the business of the company, while performing the duties assigned him by the company in respect to the erection of this silo. If a servant be loaned by one employer to another, the servant, for the time being, and for the purpose designated, must cease to be a servant of the one and become the servant of the other. For the time being and for the purpose designated, he must be engaged in furthering the business of the master to whom he is loaned,

and not in furthering the business of the master who loans him. The right to control and direct him in the performance of his duties, including the right to dispense with his services, must pass from one to the other." (p. 208. See, also, *Standard Oil Co. v. Anderson,* 212 U. S. 215; *Dalrymple v. Covey Motor Car Co.,* 66 Ore. 533; *Driscoll v. Towle,* 181 Mass. 416; *Hooper v. Brawner,* 148 Md. 417; *W. S. Quinby Co. v. Estey,* 221 Mass. 56.)

In the Tuttle case it was said that the seller had agreed to furnish a man to set up the silo. There was no express agreement of the defendant with plaintiff that an expert would set up the combine, but there is sufficient evidence to show that it was not only the general custom for the defendant to furnish such an expert to set up the combines, but that it in fact assumed the duty and obligation to furnish such an expert to set up the plaintiff's machine. It sent its own agent to do so with full power and control over him, and the expert must be regarded as its employee and it is answerable for his tortious acts.

We conclude that Cobb was the servant and agent of defendant and not of Stoehr, and that defendant is liable for his negligence which resulted in the injuries for which the action was brought.

In a cross appeal plaintiff asserts that there was error in the instructions as to estoppel, and also that the amount of the damages awarded is inadequate, but on an examination of the record we find nothing substantial in these claims of error.

The judgment of the district court is affirmed.