**AFFILIATED FM INSURANCE COMPANY, as subrogee of Parsons Railway Shops, Inc., Plaintiff,**

v.

**NEOSHO CONSTRUCTION COMPANY, INC., Defendant.**

No. CIV.A.98–2414–KHV.

United States District Court, D. Kansas, Kansas City Division.

April 6, 2000.

Terrence R. Joy, William A. Webster, Robins, Kaplin, Miller & Ciresi, Minneapolis MN,

Patrick J. Stueve, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas City, MO, Roger D. Stanton, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, KS, for Plaintiff.

Ronald W. Farichild, Phillip J. Gragson, Fairchild, Haney & Buck, P.A., Topeka, KS, Kristopher A. Kuehn, Vincent P. Schmeltz, III, Blackwell, Sanders, Peper, Martin, LLP, Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Affiliated FM Insurance Company ("Affiliated") filed this subrogation suit on behalf of its insured, Parsons Railway Shops, Inc. ("Parsons Railway"), against Neosho Construction Company, Inc. ("Neosho"). In the suit, Affiliated alleged that Neosho employees were negligent in starting a fire at the Parsons Railway premises. On November 15, 1999, a jury found that the employees were borrowed servants of Parsons Railway at the time of the fire, and that Neosho and Parsons Railway were each 50 per cent at fault for the fire. Consequently, applying Kansas law to plaintiff's subrogation claim, the Court entered judgment in favor of defendant. This matter is before the Court on *Plaintiff Affiliated FM Insurance Company's Motion For Judgment As A Matter Of Law Or In The Alternative For A New Trial* (Doc. # 165) filed December 1, 1999. For reasons set forth below, the Court overrules plaintiff's motion.

### Judgment As A Matter Of Law Standards

▮ Judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure "should be cautiously and sparingly granted." *Zuchel v. City and County of Denver,* 997 F.2d 730, 734 (10th Cir.1993). Judgment as a matter of law is appropriate "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Riggs v. Scrivner, Inc.,* 927 F.2d 1146, 1149 (10th Cir.), *cert. denied,* 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Such

judgment is proper only when "the evidence so strongly supports an issue that reasonable minds could not differ." *Ryder v. City of Topeka,* 814 F.2d 1412, 1418 (10th Cir.1987). In determining whether judgment as a matter of law is proper, the Court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *See Lucas v. Dover Corp.,* 857 F.2d 1397, 1400 (10th Cir.1988). Nevertheless, the Court must find more than a mere scintilla of evidence favoring the nonmovant; the Court must find that "evidence was before the jury upon which it could properly find against the movant." *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988). The Court must affirm the jury's verdict if, viewing the record in the light most favorable to the nonmoving party, it contains evidence upon which the jury could properly return a verdict for the nonmoving party. *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1546 (10th Cir.1996). The Court does not "weigh the evidence, pass on the credibility of the witnesses, or substitute [its] conclusions for that of the jury." *Id.* The Court must enter judgment as a matter of law in favor of the moving party, however, if "there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law." *Id.* at 1546–47 (quoting Fed.R.Civ.P. 50(a)). A legally sufficient basis requires more than a "scintilla of evidence" favoring the nonmoving party. *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988).

### New Trial Standards

The decision to grant a motion for new trial is committed to the trial court's sound discretion. *See Unit Drilling Co. v. Enron Oil & Gas Co.,* 108 F.3d 1186, 1194 (10th Cir.1997). In considering a motion for new trial, the Court must view the evidence in the light most favorable to the prevailing party. *See Joyce v. Davis,* 539 F.2d 1262 (10th Cir.1976). "[T]he party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir.1983). The Court should "exercise judgment in preference to the auto-

matic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (quotations and citations omitted).

### Jury Instruction Standards

The decision whether to give a particular jury instruction is within the sound discretion of the Court. The instructions as a whole must provide correct statements of the governing law and provide the jury with an ample understanding of the issues and applicable legal standards. *Allen v. Minnstar,* 97 F.3d 1365, 1368 (10th Cir.1996). The question is not "whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues." *Mason v. Oklahoma Turnpike Auth.,* 115 F.3d 1442, 1454 (10th Cir.1997) (quotations and citations omitted); *see Brown v. Wal–Mart Stores, Inc.,* 11 F.3d 1559, 1564 (10th Cir.1993) ("An error injury instructions will mandate reversal of a [civil] judgment only if the error is determined to have been prejudicial after reviewing the record as a whole.").

### Factual Background

Neosho, Inc. owns both Neosho Construction Company, Inc. ("Neosho") and Parsons Railway Shops, Inc. In early 1997, Bill Owens, the manager of Parsons Railway, told Doug Hutchinson, the president of Parsons Railway and the vice-president of Neosho, that Parsons Railway needed a new roof on its facility in Parsons, Kansas. After Parsons Railway had obtained several bids for the roof replacement project, Hutchinson sent Herb Sydik, Neosho's bridge foreman/superintendent, to discuss the project with Owens. Hutchinson and Owens decided to have Sydik and his crew perform the project. Sydik's crew included Burt Bossung and David Collins and several employees hired in Parsons for the project. Parsons Railway purchased the materials for the project and paid Neosho for its actual costs, including the salaries of Sydik and the crew members.

Affiliated insured the Parsons Railway facility, which was extensively damaged by fire on July 26, 1997. As a result, Affiliated paid Parsons Railway $4,725,433.50 for its losses. Affiliated seeks to recover that payment from Neosho, claiming that during the roof replacement project, Neosho employees caused the fire by negligent use of a cutting torch. Neosho claims that throughout the entire roofing project, the crew was under the exclusive direction, supervision and control of Parsons Railway, and that under the borrowed servant doctrine, Parsons Railway is responsible for any negligence of the crew. Defendant also claims that Parsons Railway was at fault because it authorized hot work under unsafe conditions and allowed the crew to do "hot work" when safer methods were available.

At trial, the parties stipulated to the amount of damages and agreed to submit the case to the jury on special interrogatories. The parties also agreed that if the jury found that the Neosho crew members were the borrowed servants of Parsons Railway, any fault which the jury attributed to Neosho would be attributed to Parsons Railway. The jury returned the following verdict:

1. Do you find by a preponderance of the evidence that at the time of the fire the crew members of Neosho Construction Company, Inc. were borrowed servants of Parsons Railway, as set forth in Instruction No. 14?

 Yes

2. Do you find by a preponderance of the evidence under Instruction No. 16 that Neosho Construction Company, Inc. was at fault?

 Yes

3. Considering all the fault at 100%, what percentage of the total fault do you find by a preponderance of the evidence is attributable to each of the following parties:

 | | |
 |---|---|
 | Neosho Construction Company, Inc. | 50% |
 | Parsons Railway Shops, Inc. | 50% |

See *Verdict* (Doc. # 156) filed November 15, 1999. Accordingly, under Kansas law, Neosho prevailed on two alternative grounds. First, because the jury found that the Neosho crew members were borrowed servants of Parsons Railway, the 50 per cent fault which the jury attributed to Neosho was assigned to Parsons Railway under the parties' agreement at trial. Neosho's fault was therefore zero. Second, Affiliated could not recover damages under Kansas comparative negligence law because its fault was 50% or greater than the total fault of the parties.

***Analysis***

### I. Plaintiff's Motion For Judgment As A Matter Of Law

■■■■■■ Affiliated argues that as a matter of law, it is entitled to judgment that the Neosho crew workers were not borrowed servants of Parsons Railway. *See Verdict* (Doc. # 156) filed November 15, 1999, question 1. Neosho argues that Affiliated waived its right to bring a Rule 50 motion on this issue because it did not raise the issue in its motion at the close of all the evidence. Rule 50(a)(2) provides that motions for judgment as a matter of law may be made at any time before submission of the case to the jury. "Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment." Fed.R.Civ.P. 50(a)(2). As a general rule, a party's failure to make a motion for judgment as a matter of law at the close of all the evidence bars consideration of such a motion after the jury returns a verdict. *See Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1455 (10th Cir.1987); Advisory Committee Notes to 1963 Amendment to Rule 50(b). In addition, a party "cannot assert new matters not presented in the [original] motion [for judgment as a matter of law]." *Anderson v. United Tel. Co.*, 933 F.2d 1500, 1503 (10th Cir.1991).

Here, Affiliated did not seek judgment as a matter of law at the close of all the evidence. At the instruction conference, counsel stated that it objected to the borrowed servant instruction, based on sufficiency of the evidence, but that "[w]e'll bring that up at the end of the case." *See Transcript Of Instruction Conference* (Doc. # 169) filed December 13, 1999 at 6. At the end of the instruction conference, the Court allowed Affiliated to raise any Rule 50 motions. At that time, Affiliated sought judgment as a matter of law only with respect to question 2 on the verdict

form, which asked whether the jury found that Neosho was at fault. *See id.* at 23. Counsel for Affiliated stated:

MR. WEBSTER: Certainly. Under Rule 50 of the Federal Rules of Civil Procedure, the plaintiff moves for judgment as a matter of law on question 2 on the special verdict form and in essence there is overwhelming evidence that Neosho Construction Company was at fault for the fire and ensuing damages. The defendants' own expert agrees that the fire was caused by the acts or omissions of Neosho Construction Company employees, specifically Mr. Sydik and his crew, and Mr. Dyer, the defendants' expert, specifically indicated that the fire watch that he performed at the end of the day once he was fully informed of the facts was not reasonable. Therefore, we don't think reasonable minds could differ on question 2.

*Id.* at 23. Affiliated's failure to seek judgment as a matter of law on question 1, which addressed the borrowed servant doctrine, bars the Court's consideration of that issue at this time.

■ The Court recognizes that Rule 50 motions should be construed liberally and "do not require technical precision as long as the trial court is aware of the movant's position." *Aguinaga v. United Food & Comm. Workers Int'l Union,* 993 F.2d 1463, 1470 (10th Cir.1993), *cert. denied,* 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994). At the same time, the Court does not believe that such leniency should excuse a party who expressly limits its motion to a specific claim and later attempts to "renew" the motion on a separate claim. *See Braintree Labs., Inc. v. Nephro–Tech, Inc.,* 81 F.Supp.2d 1122, 1127 (D.Kan.2000); *cf. Anderson,* 933 F.2d at 1503–04 (10th Cir.1991) (defendant's motion for directed verdict sufficient despite lack of specificity as to grounds on which defendant believed evidence was insufficient; issues raised in motion and later on appeal were inextricably intertwined). Here, Affiliated clearly sought judgment as a matter of law only on question 2 of the verdict form

and the Court cannot reasonably construe counsel's comments as addressing the borrowed servant doctrine.

■ Even if the Court were to consider Affiliated's argument, it would reach the same result. Affiliated contends that the crew members were not borrowed servants of Parsons Railway, and that reasonable minds could not differ on the matter.[1] Affiliated concedes that the Court correctly instructed the jury on the specific factors which it should consider in deciding the borrowed servant issue. Instruction No. 14 stated in part:

In determining th[e borrowed servant] issue, you should consider:

1. whose work were the workers performing at the time of the fire;

2. whether Neosho Construction or Parsons Railway had the right to exercise supervision and control over the workers and to determine the manner in which the work was to be done. The right to control includes:

 (a) the right to assign and reassign;

 (b) the right to terminate;

 (c) the right to control payment of wages and the amount paid; and

 (d) the right to retain an employee after the end of a particular assignment.

 Proof of actual control over the crew is not essential. It is the right to control that is determinative.

3. who benefitted from the work of the crew members;

4. whether the crew members received from Neosho Construction or Parsons Railway the benefits that an employer would normally provide its employees; and

5. whether in performing their work at the Parsons Railway facility, the crew members were abandoning the service of Neosho Construction.

---

1. Affiliated also argues that the jury's response to question 1 is not dispositive because the jury instructions were misleading. The remedy for misleading jury instructions, however, is a new trial, not judgment as a matter of law. Therefore the Court will consider Affiliated's arguments on the jury instructions only with respect to its motion for a new trial.

*Jury Instructions* (Doc. # 155) filed November 15, 1999.

In the Court's view, the jury verdict was supported by sufficient evidence that the workers were borrowed servants of Parsons Railway. Doug Hutchinson, the Parsons Railway president and Neosho vice-president, and Steve Buchman, who worked in the Neosho accounting department, both testified that the crew was performing the work of Parsons Railway at the time of the fire. *See Transcript Of Testimony Of Douglas W. Hutchinson* (Doc. # 170) filed December 13, 1999 at 47; *Transcript Of Testimony Of Steven Buchman* (Doc. # 172) filed February 8, 2000 at 13–14, 18. Although Hutchinson also testified that Neosho is a full service civil heavy contractor to the rail and transportation industry, Sydik testified that Neosho typically subcontracted building erection to other contractors. *See Transcript of Testimony of Herbert Sydik* (Doc. # 168) filed December 6, 1999 at 74–75.

The Court also finds ample evidence that Parsons Railway had the right to exercise supervision and control over the crew, and to determine the manner in which the work was to be done. Bill Owens, the general manager for Parsons Railway, testified that he had ultimate responsibility for the project, that he had the responsibility for supervising and controlling the safety measures for the project, that he knew the means and methods which the crew employed, that he had authority to change those means and methods, that he treated Sydik like one of his own plant supervisors, and that he had authority to fire any member of the roofing crew. *See Transcript Of Testimony Of William Brice Owens* (Doc. # 167) filed December 6, 1999 at 29–30, 33–35, 56. Hutchinson also testified that Owens was essentially the project manager for the roof replacement. *See Hutchinson Test.* at 42. Sydik, a bridge superintendent/foreman, usually worked under a project manager. *See id.; Transcript Of Testimony Of Marlin Siegrist* (Doc. # 174) filed February 8, 2000 at 4. Finally, Owens testified that because outside contractors have their own safety people, equipment and tools, and do the work engineered by an outside concern, he treated outside contractors differently from Sydik and his crew.

*See Owens Test.* at 35–36. The Court recognizes that the record also contains evidence that Neosho Construction initially assigned three crew members to the project (including Sydik, who was the on-site foreman), that Owens may not have been able to fire Sydik, that Neosho provided fringe benefits to the crew members, and that Neosho retained several crew members after the project was completed. In sum, a reasonable jury could find that either Parsons Railway or Neosho had the right to supervise and control the workers and the manner of their work.

Next, a reasonable jury could find that Parsons Railway benefitted from the roofing project because it only paid Neosho for actual project costs and it therefore received a low-cost roof. Although Neosho received some benefit from the fact that it was providing temporary work for three salaried employees, *see Hutchinson Test.* at 26–27, Neosho received no profit from the project.

As to the fourth factor, *i.e.* who provided the benefits that an employer would normally provide its employees, the record reveals that while Neosho provided benefits to the crew (including salaries and fringe benefits), *see Sydik Test.* at 28; *Hutchinson Test.* at 27–28, it charged back those expenses to Parsons Railway. Thus, although Neosho directly supplied the benefits, a reasonable jury could find that the weight of this factor is diminished because Parsons Railway reimbursed Neosho for all benefits which it paid.

The final factor is whether crew members abandoned the service of Neosho when they performed work at Parsons Railway. As explained above, Neosho provided employee benefits but Parsons Railway reimbursed Neosho for the cost of those benefits. In addition, in contrast to typical projects, Neosho did not provide direction or input on the roofing project. Hutchinson testified that Owens (from Parsons Railway) put the project together and that Sydik (from Neosho) worked for Owens. *See Hutchinson Test.* at 44; *see also Siegrist Test.* at 4 (Sydik usually worked under project manager). Hutchinson also testified that he simply loaned Sydik and his crew to Owens, so that Owens could place a roof on the Parsons Railway facility. *See*

*Hutchinson Test.* at 62. Finally, Sydik testified that in contrast to a typical project where he would report to a project manager from Neosho, he reported directly to Owens. *See Sydik Test.* at 16. After Sydik reported to the Parsons Railway facility, Neosho did not provide further instruction or direction regarding the project. *See Siegrist Test.* at 4; *Hutchinson Test.* at 43–44. From this evidence, a reasonable jury could conclude that for the particular purpose of the roof replacement project, Neosho relinquished sufficient control of the crew to constitute abandonment to Parsons Railway.

Considering all of the foregoing factors, more than a mere scintilla of evidence favors Neosho on the borrowed servant inquiry. Although other evidence favored Affiliated, the issue was a close one and neither side was entitled to have it resolved as a matter of law. Ample "evidence was before the jury upon which it could properly find against" Affiliated. *Cooper,* 836 F.2d at 1547. The Court therefore overrules plaintiff's motion for judgment as a matter of law.

## II. Affiliated's Motion For A New Trial

### A. *Instruction Regarding Borrowed Servant Doctrine*

 Affiliated claims that the borrowed servant instruction (Instruction No. 14) was in error because it allowed the jury to find that crew members were employees of both Parsons Railway and Neosho. In particular, Affiliated objects to that portion of the instruction which states:

> Under Kansas law, the servant of one employer may for a particular purpose, or on a particular occasion, be the servant of another employer, *though he continues to be the general servant of the first employer and is paid by him for his work.*

Instruction No. 14 (emphasis added). Neosho argues that this argument must fail because Affiliated did not raise the objection at trial.

 Rule 51 of the Federal Rules of Civil Procedure states that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The purpose of the specificity requirement is to give the district court an opportunity to correct any mistake before the jury enters its deliberations. *See Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 553 (10th Cir.1999); *Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1390 (10th Cir.1987). Accordingly, "the grounds stated in [an] objection must be obvious, plain, or unmistakable." *Id.* (quoting *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1514 (10th Cir.1984), *aff'd,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985)). An objection is adequate to preserve the issue if it "identified the objectionable instruction and denoted the legal grounds for the objection." *Weir,* 811 F.2d at 1390 (quoting *Taylor v. Denver and Rio Grande W.R.R. Co.,* 438 F.2d 351, 353 (10th Cir. 1971)).

At the instruction conference, Affiliated objected to the sentence in Instruction No. 14 which then read "[u]nder Kansas law, it is well established that the servant of one employer may for a particular purpose, or on a particular occasion, be the servant of another employer, though he continues to be the general servant of the first employer and is paid by him for his work." Affiliated argued that this sentence was "essentially the justification" for the borrowed servant doctrine and that it therefore should not be included. *See Instruction Conference Trans.* (Doc. # 169) at 5. In response, the Court removed the language "it is well established" and stated that the remainder of the language provided a context for the borrowed servant instruction. *See id.* at 5–6. Affiliated did not raise any further objection to the instruction. Ironically, Neosho objected to Instruction No. 14, claiming that two factors identified in the instruction, *i.e.* whether crew members received benefits that an employer would normally provide its employees, and abandonment by Neosho, *are important only in* the dual employment context and not in the borrowed servant context. *See id.* at 8–11,13–15. The Court and counsel for Neosho Construction discussed whether the borrowed servant and the dual employment factors were the same under Kansas law. *See*

*id.* At the end of the discussion, counsel for Affiliated responded that "[o]n that issue, Your Honor, I think that the instruction as submitted is fine. I think the essential elements are in there. They are also in the jury instructions." *Id.* at 12. At the end of the instruction conference, counsel for Affiliated also agreed that if the jury found that crew members were borrowed servants under question 1 on the verdict form, "the fault of Neosho would be added to the fault of Parsons." *Id.* at 22.

 Given that plaintiff did not object to Instruction No. 14 for the reasons it now asserts, the Court reviews the instruction only for "plain error." A court will reverse an instruction under the plain error standard only in "an exceptional circumstance—one where the error was 'patently plainly erroneous and prejudicial.'" *Giron v. Corrections Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir.1999) (quoting *Aspen Highlands*, 738 F.2d at 1516); *see Medlock*, 164 F.3d at 553. For reasons set forth below, the Court finds no plain error in Instruction No. 14. Moreover, even if Affiliated had timely objected to Instruction No. 14 for the reason it now asserts, the Court would reach the same result.

Affiliated contends that the instructions allowed the jury to find that crew members were employees of both Parsons Railway and Neosho. The Court disagrees. Instruction No. 12, which set forth the claims of the parties, stated:

> Defendant claims that during the entire roofing project, the crew was under the *exclusive* direction, supervision and control of Parsons Railway, and that under the borrowed servant doctrine, Parsons Railway *is responsible for the negligence, if any, of the crew.*

(emphasis added). Instruction No. 12 adequately informed the jury that under the borrowed servant doctrine, only one party was responsible for the crew's negligence. Instruction No. 14 also suggested that only one employer would be liable for crew member negligence. In particular, the Court instructed the jury that Neosho had the burden to show that its crew members were the borrowed servants of Parsons Railway and

that the jury should consider "whether in performing their work at the Parsons Railway facility, the crew members were abandoning the service of Neosho Construction." Inst. No. 14.

Affiliated objects only to the statement in Instruction No. 14 that "[u]nder Kansas law, the servant of one employer may for a particular purpose, or on a particular occasion, be the servant of another employer, *though he continues to be the general servant of the first employer and is paid by him for his work.*" *Id.* (emphasis added). The statement is taken directly from *Baker v. Magnolia Petroleum Co.*, 111 Kan. 555, 560, 207 P. 789, 792 (1922), which was quoted in *Bright v. Cargill, Inc.*, 251 Kan. 387, 404, 837 P.2d 348, 362 (1992). The statement recites the well established principle that the payment of wages, though relevant, is not determinative of the borrowed servant inquiry. *See, e.g., JFC Temps, Inc. v. Workmen's Compensation Appeal Bd.*, 545 Pa. 149, 680 A.2d 862, 864 (1996) (payment relevant but not determinative); *Alaniz v. Galena Park ISD*, 833 S.W.2d 204, 207 (Tex.Ct.App.–Hous.1992) (same). Affiliated maintains that the rule in *Baker* has been modified because the Kansas Supreme Court recently adopted a borrowed servant analysis from 57 C.J.S. Master and Servant § 566a, which provides: "[i]n order to escape liability, the original master must resign full control of the servant for the time being." (quoted in *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, 325, 582 P.2d 1111, 1117 (1978)). Affiliated concludes that borrowed employees cannot "remain general servants of the general employer and get paid by the general employer [under] Kansas law." *Plaintiff Affiliated FM Insurance Company's Motion For Judgment As A Matter Of Law Or In The Alternative For A New Trial* (Doc. # 165) filed December 1, 1999 at 9. Affiliated's argument is contrary to the sole authority which it cites as support:

> Under [the borrowed servant] rule the borrowing master is liable for the negligent acts of the loaned servant where the loaned servant becomes the servant of the borrowing master *even though the loaned servant remains in the employ of the loan-*

*ing master and is acting within the scope of his employment with the loaning master.*

30 C.J.S. Employer–Employee Relationship § 197 (formerly 57 C.J.S. Master and Servant § 566a) (emphasis added).

Also, in the Court's view, 57 C.J.S. Master and Servant § 566a (quoted in *Belger Cartage* ) does not conflict with *Baker.* A general employer may continue to employ and pay an individual and nevertheless resign "full control" of the individual to another employer, for a particular project or purpose. "Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other." Restatement (Second) of Agency § 227, comment a (1957).[2] In *Belger Cartage*, the Kansas Supreme Court also emphasized that "an employer's right to direct and control the method and manner of doing work is the most significant aspect of determining an employer-employee relationship." 224 Kan. at 326, 582 P.2d at 1117.

In sum, the Court finds that the jury instructions accurately stated Kansas law and properly guided the jury in its deliberations regarding the borrowed servant doctrine. Affiliated's motion for new trial based on its objection to Instruction No. 14 is overruled.

### B. *Instruction Regarding Impact Of Fault Allocation*

Affiliated argues that the Court did not properly instruct the jury regarding the effect of the allocation of fault, and that it is therefore entitled to a new trial. At trial, the parties agreed to submit the case to the jury on special interrogatories. *See Transcript Of Instruction Conference* (Doc. # 169) at 18, 22. On the comparative fault issue, the Court instructed:

---

2. The Court recognizes that in some circumstances, both the general and special employer may be liable for the employee's negligence. Affiliated did not assert this theory of liability in the pretrial order, however, and it did not ask the

### INSTRUCTION NO. 15

This case must be determined on the basis of comparative fault of the parties. In deciding the case, you will need to know the meaning of the terms "negligence" and "fault."

"Negligence" is the lack of ordinary care. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all the circumstances then existing.

A party is "at fault" when it is negligent and that negligence proximately causes or contributes to the event which brings about the injury or damages for which claim is made.

One of the issues you need to decide is whether Neosho Construction Company, Inc. was at fault and if so, the percentage of fault, if any, attributable to it and Parsons Railway Shops, Inc.

### INSTRUCTION NO. 16

In interpreting the last instruction, it may help you to keep the following things in mind:

Your first obligation is to determine if defendant was at fault in causing plaintiff's injuries.

If you find that defendant was at fault, you must determine whether Parsons Railway was at fault and next assign a percentage of fault to each party you find to be at fault.

For a party not at fault, show 0% on your verdict form.

For any party at fault, show 1% to 100% depending on your finding, on your verdict form.

If any parties are found to be at fault, the fault of all parties, when added on your verdict form must total 100%.

The parties to whom you may assign fault are:

---

Court to instruct on the concept of "joint employers." The issue presented to the jury was whether, for purposes of the roofing project, the crew members were servants of Neosho or Parsons Railway.

Parsons Railway Shops, Inc.

Neosho Construction Company, Inc.

In apportioning the percentage of fault you should keep in mind that the percentage of fault attributable to a party is not to be measured solely by the number of particulars in which a party is found to have been at fault.

You should weigh the respective contributions of the parties to the occurrence in question and considering the conduct of each as a whole, determine whether one made a larger contribution than the other, and if so, to what extent it exceeds that of the other.

*Jury Instructions* (Doc. # 155) filed November 15, 1999.

At trial, Affiliated asked the Court to include the last paragraph of the Pattern Instructions for Kansas ("PIK") Civ.3d § 105.01, which states:

A party will be entitled to recover damages if his fault is less than 50% of the total fault of all parties. A party will not be able to recover damages, however, if his fault is 50% or more.

In *Nail v. Doctor's Bldg., Inc.*, 238 Kan. 65, 708 P.2d 186 (1985), the Kansas Supreme Court specifically approved this language for all comparative negligence cases. In *Nail*, the trial court instructed the jury that the court would reduce the amount of plaintiff's damages by the percentage of fault which the jury attributed to plaintiff (paragraph 5 of PIK Civ.2d § 20.01, renumbered as PIK Civ.3d § 105.01), thus assuring the jury that "plaintiff would receive a judgment for her damages, reduced by the percentage of fault." 238 Kan. at 67, 708 P.2d at 188. The trial court did not instruct the jury, however, that plaintiff would not get any damages if his or her fault was 50 per cent (or more) (paragraph 6 of PIK Civ.2d § 20.01, renumbered as Civ.3d § 105.01). The Kansas Su-

preme Court held that the trial court's instruction was erroneous and remanded for a new trial. *See id.*, 238 Kan. at 68, 708 P.2d at 189. In particular, the Kansas Supreme Court stated that the "trial court erred in giving the next-to-the-last paragraph of PIK Civ.2d 20.01 without giving the concluding paragraph." *Id.* It stated that trial courts should include both of the last two paragraphs in PIK Civ.2d 20.01 in all comparative negligence cases. *See id.*

 Pursuant to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Neosho first argues that Rule 49(a), Fed.R.Civ.P., trumps any contrary rule which the Kansas Supreme Court may decree as to special verdicts.[3] Assuming that *Nail* requires trial courts to instruct the jury regarding the legal effect of its answers in all comparative fault cases, the Court finds that Rule 49(a) of the Federal Rules of Civil Procedure nevertheless excuses federal courts from doing so in particular cases. Rule 49(a) provides:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact.... The Court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.

Where the jury returns a special verdict, the Court decides the corresponding legal obligations of the parties. *See Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir.1996) (citing *Thedorf v. Lipsey*, 237 F.2d 190, 193 (7th Cir.1956)). "The purpose behind this rule is to divorce the jury's fact findings from the court's application of law to those findings." *Ramstad v. Lear Siegler Diversified Holdings Corp.*, 836 F.Supp. 1511, 1520 (D.Minn.1993); *see Carvalho v. Raybestos–Manhattan, Inc.*, 794 F.2d 454,

**3.** The Tenth Circuit has not specifically addressed the issue. In two cases, however, the Tenth Circuit noted in dicta that a district court had instructed the jury on the effect of its finding on comparative negligence as mandated by state law. *See Sheldon v. Unit Rig & Equip. Co.*, 797 F.2d 883, 885 n. 1 (10th Cir.1986) (Wyoming law); *Howard D. Jury, Inc. v. R & G Sloane Mfg. Co., Inc.*, 666 F.2d 1348, 1353 (10th Cir.1981)

(Colorado law). Neither case, however, addressed the *Erie* doctrine or the potential conflict between Rule 49(a), Fed.R.Civ.P., and the pertinent state statutory provisions. In each case, the parties apparently agreed to or did not object to the jury instruction regarding the effect of the jury verdict. Accordingly, the Court finds that *Sheldon* and *Howard* do not control the issue raised in the instant action.

457 n. 2 (9th Cir.1986) ("Fed.R.Civ.P. 49 is designed to prevent the jury's view of the correct result from interfering with factual findings."); *Walther v. Omaha Pub. Power Dist.*, 412 F.2d 1164, 1170 (8th Cir.1969) ("When a special verdict is used, the court need give the jury only such explanation and instructions as may be necessary to enable the triers of fact to make intelligent findings.").

▆ In this instance the Court is faced with a "direct collision" between Rule 49(a), which requires the Court to give those instructions which are necessary for the jury to make its findings, and *Nail*, which purports to require the Court to instruct the jury on the effect of its verdict. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n. 9, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) (court need not construe federal rules narrowly in order to avoid "direct collision"). Affiliated maintains that *Nail* grants a substantive right under Kansas law and that pursuant to *Erie*, federal courts must apply state substantive law. *See Erie*, 304 U.S. at 78, 58 S.Ct. 817. Not all rules stated by state courts, however, are "bound up with these [substantive] rights and obligations in such a way that [their] application in the federal court is required." *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 535, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).[4] To determine whether a state court holding is binding in federal court, the Court examines (1) whether the state court rule is so "bound up" with the state's substantive rights that it should be applied in federal court, and if not, (2) whether it is possible to apply the state court rule without disrupting the federal system of allocating functions between the judge and jury. *Id.* at 535–39, 78 S.Ct. 893.

▆ To determine if a state court rule is sufficiently "bound up" with the state substantive law, the Court determines whether the state rule is tied to, or gives effect to, a policy of the state's substantive law. *See id.* at 533–36, 78 S.Ct. 893. The Kansas Comparative Fault Act, K.S.A. § 60–258a, does not evidence a substantive right to have a jury instructed as to the legal effect of the verdict. Indeed the statute states that "the jury shall return special verdicts" and "the entry of judgment shall be made by the court." K.S.A. § 60–258(b). Nothing in the statute suggests that the jury should know the legal effect of its verdict. Thus the *Nail* rule, as Affiliated interprets it, does not further a statutory policy. Rather, the rule reflects the view of the Kansas Supreme Court as to what information trial courts should provide jurors, so that they are not misled. *See id.*, 238 Kan. at 68, 708 P.2d at 189.

Next, the Court determines if application of *Nail* in federal court would disrupt the federal system of allocating functions between the judge and jury. *See Byrd*, 356 U.S. at 537–38, 78 S.Ct. 893. In *Byrd*, the Supreme Court emphasized the "strong federal policy against allowing state rules to disrupt the judge-jury relationships in the federal courts." *Id.* at 538, 78 S.Ct. 893. " '[S]tate laws cannot alter the essential character or function of a federal court' because that function 'is not in any sense a local matter, and state statutes which would interfere with the appropriate performance of that function are not binding upon the federal court either under the Conformity Act or the Rules of Decision Act.' " *Id.* at 539, 78 S.Ct. 893 (quoting *Herron v. Southern Pac. Co.*, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857 (1931)). *See generally Wright v. Albuquerque Auto–Truck Stop Plaza, Inc.*, 591 F.2d 585, 587 (10th Cir.1979) (question whether incorrect instruction in diversity action is prejudicially erroneous is procedural one requiring application of federal law) (citing *Pollock v. Koehring Co.*, 540 F.2d 425, 426 (9th Cir.1976)). Rule 49 is designed to prevent goal-oriented fact finding by the jury. *See Ramstad*, 836 F.Supp. at 1521; *Walther*, 412 F.2d at 1170. As explained above, the federal system requires that the district court give "only such explanation and instructions as may be necessary to enable the triers of fact to make intelligent findings." *Id.* The *Nail* rule would disrupt the federal policy, ex-

---

**4.** The Federal Rules of Civil Procedure necessarily encompass "matters which, though falling within the uncertain area between substance and procedure are rationally capable of classification as either." *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

pressed in Rule 49(a), of separating the jury's fact finding from the judge's determination of the parties' corresponding legal obligations. *See Herron,* 283 U.S. at 94–96, 51 S.Ct. 383 (district court properly refused to give issue to jury, though Arizona constitution seemingly required it). Accordingly, the Court will follow Rule 49(a) to the extent it conflicts with *Nail.*

At least two federal district courts have applied Rule 49(a) and despite contrary state statutes, refused to instruct juries regarding the legal implications of their findings on comparative fault. *See Dewitt v. Smith,* 152 F.R.D. 162 (W.D.Ark.1993); *Ramstad, supra; see also Hulmes v. Honda Motor Co., Ltd.,* 960 F.Supp. 844, 863 (D.N.J.1997) (in dicta, noting support for conclusion that scope and content of special verdict in federal court is controlled by Rule 49(a), not state law). In addition, the Advisory Committee's Note to Rule 49(a) states that "the federal courts are not bound to follow state statutes authorizing or requiring the court to ask a jury to find a special verdict or to answer interrogatories." A leading treatise explains:

> The courts uniformly have reached the result predicted by the Advisory Committee and have refused to regard state law as controlling on the utilization of special verdicts and interrogatories. State law does not govern whether to use a general verdict or a special verdict, or what questions to submit if these procedures are used, or the form of the questions submitted, or how the jury is to be instructed, or the effect of an inconsistency between a general verdict and a special interrogatory, or any other detail of the special verdict and interrogatory practice.

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2502 (1995). The Court's decision not to instruct the jury regarding the legal effect of its verdict is consistent with these authorities. Plaintiff's motion for a new trial on this issue is overruled.

In the alternative, the Court finds that *Nail* does not require that a jury be instructed regarding the effect of its verdict in all comparative negligence cases. In *Nail,* the Kansas Supreme Court was concerned that the trial court had misled the jury by giving the fifth paragraph of the pattern instruction, which assured the jury that "plaintiff would receive a judgment for her damages reduced by the percentage of fault," without also giving the sixth paragraph of the pattern instruction, which provides that if plaintiff's fault was 50 per cent or more, plaintiff will not receive damages. *See Nail,* 238 Kan. at 66–68, 708 P.2d at 187–89. In the instant action, the Court did not give paragraphs five or six from PIK, and it did not mislead the jury to believe that plaintiff would receive some judgment regardless of the precise percentages of fault which the jury assigned.

**IT IS THEREFORE ORDERED** that *Plaintiff Affiliated FM Insurance Company's Motion For Judgment As A Matter Of Law Or In The Alternative For A New Trial* (Doc. # 165) filed December 1, 1999 be and hereby is **OVERRULED.**